IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON

## JAMES REED, ET AL. v. JAMIE HAMILTON, ET UX.

**Direct Appeal from the Chancery Court for Obion County**
**No. 18,378 and No. 18,434   W. Michael Maloan, Chancellor**

———————————

**No. W1999-00440-COA-R3-CV - Decided May 4, 2000**

———————————

This appeal arises from a dispute between neighboring landowners regarding whether there is an easement across the real property of Defendants Jamie and Bonnie Hamilton for the benefit of Plaintiffs Hulon O. Warlick, III, James Reed, and Wayne Matthews.  Mr. Warlick filed a complaint and Mr. Reed and Mr. Matthews filed a similar complaint against the Hamiltons asking the trial court to declare the existence of such an easement.  The court issued a number of orders in the Warlick and Reed/Matthews matters enjoining the Hamiltons from interfering with the easement and from obstructing or preventing Mr. Warlick, Mr. Reed, or Mr. Matthews from accessing their properties.  The Hamiltons nevertheless performed a number of acts in violation of these orders.  Consequently, the trial court found the Hamiltons in civil contempt and assessed sanctions and damages against them in the amount of $25,156.80, which is equal to the attorney's fees incurred by Mr. Warlick, Mr. Reed, and Mr. Matthews.  On appeal, the Hamiltons argue that the trial court was without authority to assess attorney's fees against them.  We hold that, under the circumstances of the case at bar, the trial court had the authority to assess attorney's fees against the Hamiltons pursuant to section 29-9-105 of the Tennessee Code Annotated.  We therefore affirm the ruling of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed; and Remanded**

FARMER, J., delivered the opinion of the court, in which HIGHERS and LILLARD, JJ. joined.

T. Larry Edmondson, Nashville, Tennessee and Gregory D. Smith, Clarksville, Tennessee, for the appellants, Jamie Hamilton and wife, Bonnie Hamilton.

James M. Glasgow, Union City, Tennessee, for the appellees, James Reed and Wayne Matthews.

John M. Miles, Union City, Tennessee, for the appellee, Hulon O. Warlick, III.

**OPINION**

Mr. Warlick is the owner of a piece of real property located immediately south of and adjacent to a piece of real property owned by the Hamiltons. Mr. Reed and Mr. Matthews are the owners of a piece of real property that is located south of both Mr. Warlick's property and the Hamiltons' property. There is a field road on the Hamiltons' property which serves as the sole means of ingress and egress to and from the Warlick and the Reed/Matthews properties.

In November of 1994, Mr. Warlick filed a complaint against the Hamiltons asking the trial court to declare that there is an easement across the Hamiltons' property and seeking a temporary order restraining the Hamiltons from interfering, obstructing, or preventing him from using the easement in order to gain access to his property.[1] Mr. Reed and Mr. Matthews filed a similar complaint against the Hamiltons in December of 1994.[2] The trial court granted the temporary restraining orders requested by Mr. Warlick, Mr. Reed, and Mr. Matthews. Mr. Reed subsequently filed a petition alleging that on December 4, 1994, he had attempted to gain access to his property but was prevented from doing so because the cable gate at the entrance of the easement across the Hamiltons' property was locked. Consequently, Mr. Reed requested in the petition that the Hamiltons be required to show cause why they are not in contempt of court and that they further be required to pay his attorney's fees. After a hearing on Mr. Reed's petition, the court did not find the Hamiltons in contempt, but instead issued a temporary injunction requiring the Hamiltons to furnish Mr. Reed and Mr. Matthews with a key to the cable gate and prohibiting the Hamiltons from interfering with their use of the easement. In November of 1997, Mr. Warlick and Mr. Reed filed separate petitions alleging that the Hamiltons were in contempt of court because they had performed a number of acts with the intent to prevent Mr. Warlick, Mr. Reed, and Mr. Matthews from using the field road and to deprive them of access to their properties, including (1) moving the field road, (2) grading the field road, (3) removing water drains or culverts from the field road, (4) chisel ploughing the field road, (5) placing posts and a barbed wire fence in the middle of the field road, (6) digging trenches or ditches across the field road, and (7) causing to be arrested an employee of Mr. Warlick who attempted to use the field road.[3] After a hearing on the matter, the trial court found that the Hamiltons had willfully violated its previous orders and stated that, in a subsequent hearing, it would consider argument regarding appropriate punishment, requests for attorney's fees, and proof of damages. At the conclusion of this subsequent hearing, the court found that Mr. Warlick, Mr. Reed, and Mr. Matthews had not sustained any actual damages as a result of the Hamiltons' actions, took the matter of appropriate punishment under advisement, and requested that counsel for Mr. Warlick, Mr. Reed, and Mr. Matthews submit updated affidavits documenting their fees and

[1]Mr. Warlick's complaint did not include a request for attorney's fees but did include a request for "such other, further and general relief as [he] may be entitled to under the pleadings and proof."

[2]The complaint filed by Mr. Reed and Mr. Matthews also did not contain a request for attorney's fees, but it did include a request for $100,000.00 in punitive damages and "such further and general relief as they may show themselves entitled to at the hearing."

[3]Both of these petitions included a request for attorney's fees.

expenses. The court then entered an order (1) declaring an easement across the Hamiltons' property, (2) permanently enjoining the Hamiltons from disturbing, obstructing, hindering, or changing the easement and from preventing or interfering with the use of the easement by Mr. Warlick, Mr. Reed, or Mr. Matthews, (3) finding that the Hamiltons were in civil contempt of its previous orders, and (4) imposing sanctions and damages for contempt against the Hamiltons in the amount of $25,156.80, which is equal to the amount of attorney's fees incurred by Mr. Warlick, Mr. Reed, and Mr. Matthews.[4] This appeal by the Hamiltons followed.

On appeal, the Hamiltons challenge the trial court's authority to assess $25,156.80 in sanctions and damages against them after having previously determined that Mr. Warlick, Mr. Reed, and Mr. Matthews had not sustained any actual damages as a result of the Hamiltons' conduct. To the extent that this issue involves questions of fact, our review of the trial court's ruling is *de novo* with a presumption of correctness. *See* T.R.A.P. 13(d). Accordingly, we may not reverse the court's factual findings unless they are contrary to the preponderance of the evidence. *See, e.g., Randolph v. Randolph*, 937 S.W.2d 815, 819 (Tenn. 1996); T.R.A.P. 13(d). With respect to the court's legal conclusions, however, our review is *de novo* with no presumption of correctness. *See, e.g., Bell ex rel. Snyder v. Icard, Merrill, Cullis, Timm, Furen and Ginsburg, P.A.*, 986 S.W.2d 550, 554 (Tenn. 1999); T.R.A.P. 13(d).

The courts of Tennessee have inherent authority to order punishment for acts of contempt. *See Black v. Blount*, 938 S.W.2d 394, 397 (Tenn. 1996); *Thigpen v. Thigpen*, 874 S.W.2d 51, 53 (Tenn. Ct. App. 1993). This authority is limited, however, in that the courts may only punish as contemptuous the types of acts described in section 29-9-102 of the Tennessee Code Annotated.[5]

---

[4]The court divided these sanctions and damages $8,215.00 to Mr. Warlick and $16,941.80 to Mr. Reed and Mr. Matthews.

[5]Section 29-9-102 provides as follows:

The power of the several courts to issue attachments, and inflict punishments for contempts of court, shall not be construed to extend to any except the following cases:

(1) The willful misbehavior of any person in the presence of the court, or so near thereto as to obstruct the administration of justice.
(2) The willful misbehavior of any of the officers of said courts, in their official transactions.
(3) The willful disobedience or resistance of any officer of the said courts, party, juror, witness, or any other person, to any lawful writ, process, order, rule, decree, or command of said courts.
(4) Abuse of, or unlawful interference with, the process or proceedings of the court.

*See Black*, 938 S.W.2d at 397-98; *State v. Turner*, 914 S.W.2d 951, 955 (Tenn. Crim. App. 1995). A contempt may be either civil in nature or criminal in nature. *See Wilson v. Wilson*, 984 S.W.2d 898, 906 (Tenn. 1998)(Birch, J., dissenting); *Black*, 938 S.W.2d at 398; *Turner*, 914 S.W.2d at 954. Civil contempt occurs when a person does not comply with a court order and an action is brought by a private party to enforce his or her rights under the order that has been violated. *See Black*, 938 S.W.2d at 398; *Robinson v. Air Draulics Eng'g Co.*, 377 S.W.2d 908, 912 (Tenn. 1964); *Turner*, 914 S.W.2d at 955. Punishment for civil contempt is designed to coerce compliance with the court's order and is imposed at the insistence and for the benefit of the private party who has suffered a violation of his or her rights. *See Black*, 938 S.W.2d at 398; *Turner*, 914 S.W.2d at 955; *Sherrod v. Wix*, 849 S.W.2d 780, 786 n.4 (Tenn. Ct. App. 1992). Criminal contempt, on the other hand, occurs when the dignity and authority of the court has been offended. *See Black*, 938 S.W.2d at 398; *Turner*, 914 S.W.2d at 955; *Sherrod*, 849 S.W.2d at 786 n.4. Punishment for criminal contempt is designed to vindicate the court's authority and maintain the integrity of its orders and thus is generally punitive rather than remedial in nature. *See Wilson*, 984 S.W.2d at 904; *State v. Winningham*, 958 S.W.2d 740, 746 (Tenn. 1997); *Black*, 938 S.W.2d at 398; *Turner*, 914 S.W.2d at 955; *Thigpen*, 874 S.W.2d at 53.

In the case at bar, the Hamiltons concede that the trial court had the power to hold them in contempt of court but maintain that the court exceeded its statutory authority with respect to the punishment that was imposed upon them. Section 29-9-103 of the Tennessee Code Annotated sets forth the general rule regarding punishment for contempt, as follows:

> (a) The punishment for contempt may be by fine or by imprisonment, or both.
> (b) Where not otherwise specially provided, the circuit, chancery, and appellate courts are limited to a fine of fifty dollars ($50.00), and imprisonment not exceeding ten (10) days, and, except as provided in § 29-9-108, all other courts are limited to a fine of ten dollars ($10.00).

Tenn. Code Ann. § 29-9-103 (Supp. 1999). The trial court in the instant case is a chancery court and thus was not authorized by section 29-9-103 to impose a fine for contempt against the Hamiltons in excess of $50.00. As stated above, the trial court ordered the Hamiltons to pay "sanctions and damages" in the amount of $25,156.80, an amount obviously in excess of $50.00. Mr. Warlick, Mr. Reed, and Mr. Matthew contend, however, that the trial court was authorized to order the Hamiltons

---

> (5) Willfully conversing with jurors in relation to the merits of the cause in the trial of which they are engaged, or otherwise tampering with them.
> (6) Any other act or omission declared a contempt by law.

Tenn. Code Ann. § 29-9-102 (1980).

-4-

to pay $25,156.80 in "sanctions and damages" by section 29-9-105 of the Tennessee Code Annotated, which provides as follows:

> If the contempt consists in the performance of a forbidden act, the person may be imprisoned until the act is rectified by placing matters and person in statu[s] quo, or by the payment of damages.

Tenn. Code Ann. § 29-9-105 (1980).

We are aware of no reported cases in Tennessee specifically addressing whether section 29-9-105 authorizes a court to award attorney's fees in cases of civil contempt. However, this Court considered this exact issue in the unreported case *Keeley v. Massey*, No. 02A01-9307-CH-00159, 1994 WL 59556 (Tenn. Ct. App. Feb. 28, 1994).[6] In *Keeley*, a post-divorce domestic relations case, the trial court found that Mr. Massey was in willful civil contempt of an order previously entered by the court regarding Mr. Massey's visitations with the parties' minor sons. *See id.* at *1. The court held, however, that Mr. Massey could purge himself of this contempt by precisely following the court's future visitation orders and by paying $1,500.00 of Ms. Keeley's attorney's fees. *See id.* On appeal, Mr. Massey argued that the trial court lacked the authority to assess a portion of Ms. Keeley's attorney's fees against him. *See id.* This Court upheld the award of attorney's fees, noting that damages awarded under section 29-9-105 are compensatory in nature, that the appropriate measure of damages under section 29-9-105 is actual loss, and that damages under section 29-9-105 may include attorney's fees. *See id.* at *5 (citing *In re Crabtree a/k/a West Knoxville Inv. Co.*, 60 B.R. 147, 150 (Bankr. E.D. Tenn. 1986)("An award of attorney's fees and expenses to a successful movant in a civil contempt proceeding may be appropriate.")). Similarly, in the unreported case of *Kuykendall v. Latham*, 1991 WL 10178 (Tenn. Ct. App. Feb. 4, 1991), the trial court enjoined the Lathams from engaging in certain activities that would violate a covenant not to compete that the Lathams had entered into with Ms. Kuykendall. *See id.* at *1. Ms. Kuykendall subsequently filed a motion alleging that the Lathams had violated the injunction and thus were in contempt of court. *See id.* After hearing the motion, the trial court agreed that the Lathams were in contempt and ordered them to pay Ms. Kuykendall $1,750.00 in damages and $350.00 in attorney's fees. *See id.* On appeal, this Court affirmed the ruling of the trial court, stating as follows:

> First, the Lathams assert that the court erred in awarding Kuykendall her attorney fees because, in the absence of a statutory provision or contractual agreement providing for attorney fees, the award is not a proper element of damages and goes against the public policy of this State. *See Goings v. Aetna Casualty and Surety Company*, 491 S.W.2d 847 (Tenn. App. 1972). However, it has been held that an award of attorney fees may be appropriate to a successful movant in a civil contempt proceeding. *See TWM Mfg. Co. v. Dura Corp.*, 722 F.2d 1261, 1273 (6th Cir. 1983), *cert. denied* 479 U.S. 852 (1986). Although there is no contractual

---

[6]Unpublished opinions are generally considered persuasive authority. Supreme Court Rule 4(H)(1) as amended November 1, 1999.

agreement or statutory provision which addresses attorney fees in a contempt proceeding, the trial court is vested with much discretion in the allowance of attorney fees. ***Threadgill v. Threadgill***, 740 S.W.2d 419 (Tenn. App. 1987). Likewise, the appellate court will not interfere with the trial court's award of attorney fees except upon a showing that the trial court abused its discretion. ***Id.*** We do not find that the trial court abused its discretion and we affirm the award of attorney fees.

***Id.*** at *2.

Consistent with the opinions of this Court in ***Keeley*** and ***Kuykendall***, we agree with Mr. Warlick, Mr. Reed, and Mr. Matthews that the trial court had the authority to assess their attorney's fees against the Hamiltons pursuant to section 29-9-105. Almost immediately following the commencement of the case at bar, the Hamiltons willfully violated the temporary restraining orders issued by the trial court. The Hamiltons' acts of contempt continued throughout the pendency of the case, as they willfully violated the temporary injunction subsequently entered by the trial court. As a direct result of the Hamiltons' actions, Mr. Warlick, Mr. Reed, and Mr. Matthews were forced to incur attorney's fees associated with the filing of petitions for contempt and hearings subsequently held thereon. As noted by this Court in ***Keeley***, damages under section 29-9-105 are compensatory in nature. The trial court's award of attorney's fees served to compensate Mr. Warlick, Mr. Reed, and Mr. Matthews for the loss that they sustained as a result of the wrongful and contemptuous actions of the Hamiltons. Under such circumstances, we think that the court properly concluded that the attorney's fees incurred by Mr. Warlick, Mr. Reed, and Mr. Matthews are among the types of damages that are compensable under section 29-9-105. We therefore affirm the order of the trial court imposing "sanctions and damages" for contempt against the Hamiltons in the amount of $25,156.80.

Based on the foregoing, the ruling of the trial court is affirmed. Costs on appeal are assessed against the Hamiltons, for which execution may issue if necessary.