IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
July 6, 2004 Session

## TOWN OF CORNERSVILLE, TENNESSEE v.
## MELEATHIE HARMON, ET AL.

**Appeal from the Chancery Court for Marshall County**
**No. 12,301      James B. Cox, Chancellor**

---

**No. M2003-01061-COA-R3-CV - Filed January 28, 2005**

---

The Town of Cornersville filed suit against a local business seeking injunctive relief to require compliance with its zoning ordinance. During the pendency of the matter, the trial court found the local business in contempt on three separate occasions for failure to comply with orders of the court requiring compliance with the ordinance. At a hearing on the merits, the trial court found that since the property at issue was within the town limits, it was subject to the zoning ordinance. Furthermore, the court found the business in contempt for failure to comply with its prior orders and thus subject to a fine of fifty dollars ($50.00) per day. The business appeals insisting that part of the subject property is not within the town's zoning jurisdiction, that the trial court exceeded its statutory contempt authority, and that the town is estopped from raising any complaint regarding zoning noncompliance. We agree with the trial court and affirm its judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court**
**Affirmed**

PATRICIA J. COTTRELL, J., delivered the opinion of the court, in which WILLIAM B. CAIN and FRANK G. CLEMENT, JR., JJ., joined.

William L. Abernathy, Jr., Shelbyville, Tennessee, for the appellants, Meleathie Harmon; Camuel Harmon; Harmon Scrap Metal, Inc. and Harmon Scrap Metal, LLC.

Paul B. Plant, J. Christopher Williams, Lawrenceburg, Tennessee, for the appellee, Town of Cornersville, Tennessee.

## OPINION

At issue is the trial court's finding that Camuel Harmon and his businesses, Harmon Scrap Metal, Inc. and Harmon Scrap Metal, LLC, violated the Town of Cornersville's zoning ordinance. Cornersville filed suit against Mr. Harmon, his businesses and his mother (who owned one of the

parcels) seeking injunctive relief to prohibit use of two tracts in violation of the zoning ordinance.

Camuel Harmon, Harmon Scrap Metal, Inc., and Harmon Scrap Metal, LLC own and operate a scrap metal plant inside the town limits of Cornersville, Tennessee. Between 1998 and 2000, two parcels of property across the street from the plant were purchased by Mr. Harmon, his mother, and/or his businesses to expand the scrap metal plant's operations ("Tract 2" and "Tract 3"). Mr. Harman was using the parcels to park vehicles and store equipment. Both parcels are zoned under the Town of Cornersville's municipal zoning ordinance for "R-1", which is light residential development and use. There is no dispute that the entire parcel designated on Tract 2 is zoned R-1. There is an issue regarding whether and to what extent the parcel designated as Tract 3 is located within the limits of Cornersville and is thus subject to the zoning restriction of R-1. The validity and interpretation of the R-1 zoning classification is not at issue.

When Mr. Harmon began to expand the scrap metal business on Tracts 2 and 3, he applied to the Cornersville Board of Zoning Appeals for an exception or variance from the R-1 restriction that would allow him to use the parcels in his scrap metal business. The Board of Zoning Appeals denied the request in September of 2000. Mr. Harmon did not appeal the decision of the Board of Zoning Appeals. Thereafter, Mr. Harmon continued to expand the operation of the scrap metal business to the two tracts by putting up fences and parking vehicles there.

After continued complaints from neighboring property owners, the town filed suit against Mr. Harmon, his businesses, and his mother in March of 2002, seeking, among other things, both a temporary and permanent injunction barring Mr. Harmon's use of the two tracts in violation of the town's zoning ordinance.

Prior to a scheduled hearing for temporary relief, the parties entered into an Agreed Order on April 5, 2002. In the Agreed Order, Mr. Harmon agreed to bring the property into compliance with the R-1 zoning classification and keep it in compliance with Cornersville's zoning classification pending a final hearing on the suit. The Agreed Order also provided that its violation was grounds for contempt.

Thereafter, the town filed a Motion for Attachment of Contempt on July 9, 2002, alleging the defendants continued to use the tracts in violation of the R-1 classification and Agreed Order. After a hearing on the contempt matter on July 24, 2002, the trial court found Camuel Harmon and the two businesses in contempt for failure to comply with the Agreed Order because they failed to bring the tracts in compliance with the R-1 zoning classification. The court found the contempt was not intentional or malicious and that Mr. Harmon could correct the violation by bringing the tracts into compliance with the R-1 zoning classification within one week. In its order (hereinafter the "July Contempt Order") the trial court ordered that Mr. Harmon's use of the property comply with the R-1 residential zoning classification and described specifically what Mr. Harmon must do to comply with the Court's order:

Specifically, said Defendants shall remove any and all items of property, including automobiles, trucks, trailers, and/or vehicles, whether operable or inoperable, and specifically including "rolloffs" and/or any scrap metal or containers which may hold scrap metal, whether said containers are empty or filled, from said parcel by said time and date, and shall keep said parcel free of such property pending further orders of this Court. . . . Defendants may allow passenger vehicles, as such is used by employees and/or guests of Defendants to be parked upon said parcel for a de minimus time. Further, Defendants may allow trucks to be parked upon said parcel for de minimus time.

In violation of the Agreed Order and the court's July Contempt Order, Mr. Harmon inexplicably continued to store and/or park trucks, automobiles, trailers, containers, and scrap metal on the subject property. The trial court held yet a second hearing regarding contempt on August 14, 2002, that resulted in another order (hereinafter referred to as the "August Contempt Order"). In the August Contempt Order, the court found that Mr. Harmon failed to comply with the Agreed Order and the July Contempt Order since he did not bring the property into compliance with the R-1 zoning classification. The court found this contempt to be intentional and/or malicious and assessed a civil penalty of One Hundred ($100) dollars. This sanction is not an issue on appeal. In its August Contempt Order, the court again ordered that Mr. Harmon bring the property into compliance with the R-1 zoning classification.

Specifically, said Defendants shall remove any and all items of property, including automobiles, trucks, trailers, and/or vehicles, whether operable or inoperable, and specifically including "rolloffs" and/or any scrap metal or containers which may hold scrap metal, whether said containers are empty or filled.

Additionally, the court was clear as to what use could be made of the property:

. . . Defendants may allow passenger vehicles, as such is used by employees and/or guests of the Defendants, to be parked upon said parcel for de minimus time. Further, Defendants may allow trucks to be parked upon said parcel for de minimus time. For the purposes of this Order, de minimus time shall not be taken to include overnight parking unless said vehicles are directly related to Defendant(s)' scrap metal business and have been received on said property in such late time in the day as to not allow said vehicle's contents to be processed, provided that there is no room for said vehicle within the confines of Defendants' business across the street from said parcel and that said vehicle will be removed the next following morning.

The August Contempt Order gave Mr. Harmon and his businesses until the end of the day to bring the subject properties into compliance. In the event Mr. Harmon failed to comply with the August Contempt Order, the court's order provided for a fine of $50.00 to be assessed for each separate day that the property was not in compliance with that Order, with each day to represent a separate and distinct instance of contempt.

At the trial on the merits on January 8, 2003, several issues were addressed regarding Mr. Harmon's use of the two parcels. At issue for the first time was a gravel pad Mr. Harmon built on Tract 3 after the August hearing. The pad's purpose was to serve as a parking lot for the scrap metal business and a place to store scrap metal. The construction and use of the gravel pad was clearly in violation of all three preceding orders in this case. Mr. Harmon, however, took the position that the portion of Tract 3 where the pad was built was outside the town limit of Cornersville and, thus, not subject to Cornersville's zoning restrictions. Also at issue was a private road Mr. Harmon had built on these tracts to gain access to the gravel pad.

The court heard testimony from several neighbors that established that Mr. Harmon used the tracts to park vehicles and store items in violation of the court's orders. The testimony by neighbors and by Camuel Harmon himself supported the town's allegation that the orders were violated both on property that was undisputedly within the town's zoning restrictions and on the gravel pad that was the subject of the dispute over the town limits. There was virtually no dispute regarding the fact that Mr. Harmon violated the Agreed Order, the July Contempt Order and the August Contempt Order by parking either trucks, trailers, containers or scrap metal on the subject property every day.

The court also heard testimony regarding whether the part of Tract 3 containing the gravel pad was in the limits of Cornersville and thus subject to the R-1 zoning classification. The town administrator, Eric Brongenberg, testified that the town's boundary line dates back to the 1800's and, therefore, the town customarily relied on the county's tax maps as evidence of the town's boundaries. The town's zoning ordinance and zoning map were admitted to establish the town limits.[1] Finally, a licensed surveyor, Rex Northcutt, also testified that a survey he had conducted earlier showed that the gravel pad was within the town limit. The town introduced evidence to establish that while the gravel pad was being built, Mr. Harmon had been warned by a Cornersville Alderman that the gravel pad was within the town limits and violated the R-1 zoning classification. Mr. Harmon also testified that when he purchased the property, he was provided a copy of Mr. Northcutt's survey plat of the property showing the town's limits.

As a result of the foregoing, the court entered an order on March 26, 2003 which found as follows:

1) that Camuel Harmon and his two businesses are in willful contempt of court for violation of the August Contempt Order;

2) that Mr. Harmon and the businesses be fined fifty Dollars($50.00) per day for the civil contempt for each day since August 14, 2002;

---

[1]The record on appeal includes the ordinance as Exhibit 14. Exhibit 14 has noted on it "ordinance & map." The map, however, is not contained in the record. Since there is no issue that the map shows the gravel pad to be within the town limits, the omission of the map in the record does not affect our consideration of the issues raised.

3) that Mr. Harmon and his businesses pay the town its attorney's fees of Sixteen Thousand Five Hundred, Fifty-eight Dollars ($16,558);

4) that, based upon a preponderance of the evidence, the gravel pad is located within the limits of Cornersville and is subject to the R-1 zoning classifications;

5) that the private road across the property zoned R-1 violates that zoning classification;

6) the tracts shall be used in compliance with the R-1 zoning requirements of Cornersville; and

7) any further contempt by Camuel Harmon will result in the incarceration of Mr. Harmon.

On appeal, Mr. Harmon and his businesses challenge (1) the amount of the contempt fine levied against them; (2) whether there is a preponderance of the evidence to establish the gravel pad on Tract 3 is within the town's limits; (3) whether the town is estopped from imposing the R-1 zoning classifications on the subject properties; and (4) whether the roadway violated the R-1 classification.

To the extent that the issues on appeal involve questions of fact, our review of the trial court's ruling is *de novo* with a presumption of correctness. Tenn. R. Civ. P. 13(d). Our review of a trial court's determinations on issues of law is *de novo,* with no presumption of correctness. *Frye v. Blue Ridge Neuroscience Center, P.C.*, 70 S.W.3d 710, 713 (Tenn. 2002); *Bowden v. Ward*, 27 S.W.3d 913, 916 (Tenn.2000); *Ganzevoort v. Russell*, 949 S.W.2d 293, 296 (Tenn. 1997).

## I. AMOUNT OF CONTEMPT SANCTIONS

Mr. Harmon argues that the trial court exceeded its statutory authority by assessing a fine of $50 per day for contempt.

While courts have inherent power to punish contempt, they are limited to punishing as contemptuous only those acts set out by statute. *Doe v. Board of Prof. Responsibility*, 104 S.W.3d 465, 473 (Tenn. 2003); *Black v. Blount*, 938 S.W.2d 394, 397 (Tenn. 1996). Among the types of conduct for which courts have authority to "inflict punishments for contempts" is "[t]he willful disobedience or resistance of any officer of such courts, party, juror, witness, or any other person, to any lawful writ, process, order, rule, decree, or command of such courts." Tenn. Code Ann. § 29-9-102(3).

It is not really subject to debate that Mr. Harmon's willful conduct in continuing to use the subject tracts for his business violated the previous orders of the court. Despite the trial court's decision in July to give Mr. Harmon the opportunity to correct and discontinue his violations,

without imposing any other sanction, he nonetheless continued to violate the detailed order of the court. At the second contempt hearing, the trial court found his contempt to be intentional and malicious. The court once again provided explicit and detailed descriptions of the actions Mr. Harmon was required to take and the conduct that would constitute a violation of its orders. The court also ordered that each day in the future that Mr. Harmon failed to comply with the orders constituted a separate and distinct instance of contempt, subject to a $50 fine for each day.

Despite the clear direction of the court and the clear notice of the consequences that would ensue for violation, Mr. Harmon continued to violate those orders and failed to comply. There was clear evidence of his continuing, daily violations and willful disobedience of those orders. Although Mr. Harmon does not admit there were grounds for contempt, he does not argue otherwise.

Once a court finds a party to be in contempt, it has several available remedies. *Ahern v. Ahern*, 15 S.W.3d 73, 79 (Tenn. 2000). The action taken by the court to address the contempt can be designed to coerce compliance with the court's orders or to punish for past disobedience. The remedies are related to the classification of the contempt as either civil or criminal. "Traditionally, contempt has been classified as civil or criminal depending upon the action taken by the court to address the contempt." *Id*. at 78.

Civil contempt, the type at issue in the case before us, occurs when a person violates a court order and a contempt action is brought by a private party to enforce rights under the order that was violated. *Doe*, 104 S.W.3d at 473; *Black*, 938 S.W.2d at 398; *Reed v. Hamilton*, 39 S.W.3d 115, 118 (Tenn. Ct. App. 2001). In a civil contempt action, the remedy imposed by the court upon a finding of contempt is designed to compel compliance with or performance of a court order. *Doe*, 104 S.W.3d at 473; *Ahern*, 15 S.W.3d at 79. It is imposed for the benefit of the private party to enforce rights granted in the earlier orders. *Doe*, 104 S.W.3d at 473; *Ahern*, 15 S.W.3d at 79.

Often, the method imposed in civil contempt to compel compliance is imprisonment until the party complies with the order; compliance will result in release. *Black*, 938 S.W.2d at 398. "Thus, with civil contempt, the one in contempt has the 'keys to the jail' and can purge the contempt by complying with the court's order." *Ahern*, 15 S.W.3d at 79, citing Tenn. Code Ann. § 29-9-104 and *Garrett v. Forest Lawn Memorial Gardens*, 588 S.W.2d 309, 315 (Tenn. Ct. App. 1979).

In addition to imprisonment, fines, monetary penalties, or similar sanctions may be used to coerce compliance with a court order. *Bryan v. Leach*, 85 S.W.3d 136, 160 (Tenn. Ct. App. 2001). There is clear statutory authority for a court to order a fine for every day a party remains in violation of a court order where the party has the ability to comply. *Id*. Tennessee Code Annotated § 29-9-104 provides:

> (a) If the contempt consists in an omission to perform an act which it is yet in the power of the person to perform, the person may be imprisoned until such person performs it;

(b) The person or if same be a corporation, then such person or corporation can be separately fined, as authorized by law, for each day it is in contempt until it performs the act ordered by the court.

The trial court's actions in August finding Mr. Harmon in contempt and ordering that each day of continued noncompliance would be a separate act of contempt subject to a fine of $50 per day were clearly designed to coerce compliance. The daily fine pending compliance was clearly authorized by Tenn. Code Ann. § 29-9-104(a).

Mr. Harmon argues that Tenn. Code Ann. § 29-9-105 limits the court's authority to fine him. That statute provides:

If the contempt consists of the performance of a forbidden act, the person may be imprisoned until the act is rectified by placing matters and person in status quo, or by the payment of damages.

The damages provision of that statute is designed to compensate a party who is injured by a violation of a court order, and the measure of damages is the actual loss. *Reed*, 39 S.W.3d at 119; *see also Bryan*, 85 S.W.3d at 161 n. 27. It appropriately provided the basis for the trial court's award of attorney fees to the Town which were incurred because of Mr. Harmon's continuing acts of contempt. *Reed*, 39 S.W.3d at 120.

We do not agree, however, with Mr. Harmon's assertion that Tenn. Code Ann. § 29-9-105 exclusively "controls" the contempt sanctions herein. The sanctions authorized in Tenn. Code Ann. § 29-9-104 are designed to coerce compliance; the damages authorized in Tenn. Code Ann. § 29-9-105 are compensatory. Awarding fees to a party who must incur those fees to enforce a court order is not inconsistent with coercive fines to prevent future violations.[2]

Mr. Harmon also argues that the authority granted in Tenn. Code Ann. § 29-9-104(b) to assess daily fines in order to coerce compliance applies only to situations where the contempt consists of failure or omission to perform an act, whereas Tenn. Code Ann. § 29-9-105, which includes no such authority, applies to contempt consisting of the performance of a forbidden act. We find no authority for the proposition that a court cannot order both compensatory damages and coercive sanctions if the facts warrant both.

In this case, the trial court found Mr. Harmon in contempt, held he could purge himself of the contempt by coming into compliance, and remaining in compliance, with the zoning ordinance. The court specifically listed the actions Mr. Harmon was to take in order to comply, including removing cars, trailers, metal, containers, and other items. The court also listed actions that would be permitted for limited time periods and in certain circumstances. Thus, the order required Mr.

_____

[2]Consequently, we disagree with Mr. Harmon's characterization of the court's order as a choice to assess damages rather than incarcerate.

Harmon to perform specific acts, which he did not do. It can also be interpreted an including a prohibition on continued violations, which he also did not comply with. The facts of this case warrant imposition of both the coercive fine and the compensatory damages in the form of attorney fees.

Therefore, we find that the trial court was well within its authority to find that failure to comply with a court order subjected Mr. Harmon to a fine of Fifty Dollars ($50.00) per day pursuant to Tenn. Code Ann. § 29-9-104.

## II. Location of City Limit

Mr. Harmon argues that no material evidence was introduced to establish that the gravel pad on Tract 3 is inside the town limits of Cornersville. Mr. Harmon maintains that tax maps are not admissible to establish a boundary line and, since the court relied on evidence based at least in part upon tax maps, the evidence supporting the location of the boundary line is not material. The Town of Cornersville maintains that ample evidence was introduced to support the trial court's finding that the gravel pad is within the boundary at Cornersville and is thus subject to its zoning restrictions. The trial court found as follows:

> Concerning the location of the "pad" and whether or not the "pad" is or is not within the Town Limits of the Town of Cornersville, the Court finds by a preponderance of the evidence that the Town Limits are as shown in the Map incorporated in the Zoning Ordinance, which said Map and zoning Ordinance were made exhibits at the hearing of this cause. The Court credits Mr. Rex Northcutt's testimony and his drawing concerning the location of said Town Limits in relation to the location of the "pad." Mr. Camuel Harmon's testimony itself bolsters Mr. Rex Northcutt's testimony, particularly, Mr. Harmon's testimony concerning the Town Limit line as it relates to the horse barn. The Court further finds that Camuel Harmon knew from the outset that there was a question about the boundary, which is why he called Rex Northcutt back. The Court finds that Mr. Harmon was aware of Mr. R.E. Woodward's opinion of the existence of the Town Limit lines and Mr. R.E. Woodward's opinion that all of Mr. Harmon's construction on the "pad" was, in fact, within the Town Limit lines, and further that Mr. Harmon was aware that Mr. R.E. Woodward was a member of the Board of Aldermen of Town of Cornersville. The Court then finds as a matter of fact that the Town Limit lines of the Town of Cornersville are consistent with the Zoning Map introduced as a collective exhibit with the Zoning Ordinance of the Town of Cornersville. The Court further finds that the Town having established the location of the Town Limit line, that all or at least part of the "pad" constructed by Camuel Harmon is within the Town Limits of the Town of Cornersville.

As is often the case, boundary lines may date back decades, if not centuries, and may not be susceptible to ready location. The issue before the trial court is not whether a boundary exists, but

rather, where it is located. Given this, it was appropriate for the court to examine the best evidence available, including custom and usage, and determine based on a totality of the circumstances where the boundary lies.

At the trial, City Administrator Eric Brangenberg testified that Cornersville's boundary lines date back to the 1800's and, therefore, the town frequently relies on county tax maps as evidence of its boundary line. According to Mr. Brangenburg, he is aware of no records except tax maps that address the Town's boundaries.[3] The Town also introduced the town's Zoning Ordinance and the zoning map incorporated into that ordinance to establish the town's boundaries.

The trial court was presented with testimony from a licensed land surveyor that placed the pad within the city limits. The zoning map likewise placed the pad within the town limits. There was no evidence introduced that disputed the location of the boundary line as shown on the zoning map.

Mr. Harmon maintains that tax maps are admissible only as evidence of who paid taxes on the property and not as evidence of boundaries. Cornersville, on the other hand, argues that tax maps and information derived from tax maps are admissible as evidence of boundary line location.

Mr. Harmon relies on cases where the issue is the location of property line between adjoining landowners for the proposition that tax maps may not establish boundary lines. In that context, the usefulness of tax maps is limited since boundary lines are established by intent of the private parties. The issue here is the location of the city limit of a town and not a dispute between landowners as to a common boundary. As such, under the circumstances presented here when the town itself must rely on tax maps as part of its usual business, tax maps and documents referencing tax maps may assist is determining a boundary line of a governmental entity. Such evidence is not necessarily conclusive but may be considered by the trier of fact.[4] Additionally, there was other evidence of the town limits.

We find that under the unique facts of this case, the court's finding is supported by a preponderance of the evidence. Therefore, since the gravel pad is within the town's boundaries, it is included within the R-1 classification and is prohibited.

---

[3]No legislation establishing the town limits of Cornersville was introduced at trial. Based upon the testimony, apparently the legislation could not be located.

[4]On appeal, Cornersville justified reliance on tax maps to establish boundaries through the doctrine of acquiescence, *i.e.*, that by paying taxes to Cornersville on the property Mr. Harmon and his predecessors in title have, in effect, acquiesced to Cornersville's jurisdiction. The proof on this issue at trial, however, is not substantial enough to justify reliance on this doctrine.

### III. ESTOPPEL

Assuming that the gravel pad is subject to the R-1 classification, Mr. Harmon alternatively contends that the town is estopped from raising this issue. According to Mr. Harmon, since the town took no action while the gravel pad was being built, it is thus estopped from imposing the R-1 zoning classification to it.

In essence, Mr. Harmon's position is that in spite of his willful refusal to comply with an Agreed Order and two orders for contempt, this court should find that the town's failure to take additional action is grounds for estoppel. We fail to see what additional action the town should have taken in view of the ongoing litigation and its two motions for contempt.

Public agencies generally are not subject to estoppel and it is imposed on governmental entities "only under the most exceptional circumstances." *Elizabethton Housing and Development Agency Inc. v. Price*, 844 S.W.2d 614, 618 (Tenn. Ct. App. 1992). Such exceptional circumstances do not exist in this case.

### IV. PRIVATE ROADWAY

According to Mr. Harmon, the trial court's finding that the road he built across the property zoned R-1 to service the gravel pad violated the zoning restrictions is in error since the road services property outside the zoning restrictions. The basic premise behind Mr. Harmon's argument is removed since we have upheld the trial court's finding that the gravel pad is within the R-1 restriction. Nonetheless, we will address the issue.

The trial court found that since the private roadway was located on property classified as R-1, then whether it benefits property outside the R-1 classification is not relevant. Specifically, the trial court found:

> The Court further finds that regardless of whether the "pad" is or is not within the Town Limits of the Town of Cornersville, that there is no use contemplated in the Zoning Ordinance of the Town of Cornersville as relates to R-1 that would allow any of the land owned by any of the Defendants herein to become a driveway to access said "pad" without the dedication of a roadway. There has been no such dedication, and the Court finds that the creation of a road by the Defendants to access property, even if said property were not within the Town Limits of the Town of Cornersville, is not in compliance with the R-1 Zoning requirements in the Town of Cornersville Zoning Laws.

The Tennessee case Mr. Harmon cites to support this position, *City of Sevierville, Tennessee v. Bobby W. Riggs and M-Helicopters of Tennessee, Inc.*, 1992 WL 301323 (Tenn. Ct. App. Oct. 23, 1992), is not applicable. In that case, the issue was whether a road violated a zoning ordinance because the helicopter pad it serviced was prohibited under the zoning ordinance. The helicopter

pad was outside the city limits and the road was within the city limits. Sevierville sought to prohibit the road, not based on zoning classifications governing the property where the road was located, but, rather, simply because it serviced a business that would violate the zoning ordinance if it was within the city. In fact, the court's holding was that the city had no authority to zone beyond its limits. *Id.* at *2. This case is distinguishable since the issue in the case before us revolves around zoning classification affecting the property with the road.

Mr. Harmon does not argue that under R-1 zoning an allowable use is a private roadway. He has not argued that the town does not have authority to adopt or enforce such zoning restrictions. Since the road itself violated the zoning ordinance, regardless of its purpose, the trial court's finding is upheld.

## CONCLUSION

The judgment of the trial court is affirmed. Costs of the appeal are taxed to the appellants, Meleathie Harmon, Camuel Harmon, Harmon Scrap Metal, Inc. and Harmon Scrap Metal, LLC

_____
PATRICIA J. COTTRELL, JUDGE