IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
July 23, 2008 Session

## STATE OF TENNESSEE v. RANDY GEORGE ROGERS

**Direct Appeal from the Circuit Court for McMinn County**
**No. 26969     Hon. Riley Anderson, Circuit Judge, by Designation**

_____

**No. E2007-02535-COA-R3-CV  - FILED SEPTEMBER 29, 2008**
_____

The Trial Court held defendant in contempt.  On appeal, we affirm.

**Tenn. R. App. P.3 Appeal as of Right; Judgment of the Circuit Court Affirmed.**

HERSCHEL PICKENS FRANKS, P.J., delivered the opinion of the Court, in which CHARLES D. SUSANO, JR., J., and D. MICHAEL SWINEY, J., joined.

Charles C. Burks, Knoxville, Tennessee, for appellant, Randy George Rogers.

Robert E. Cooper, Jr., Attorney General and Reporter, and Juan G. Villasenor, Assistant Attorney General, Nashville, Tennessee, for appellee, State of Tennessee.

**OPINION**

This case originated when the Trial Judge filed a detailed Show Cause Order re: Alleged Criminal Contempt of Attorney Randy George Rogers.  The Order asserted that on January 19, 2007, at about 11:00 a.m., Judge Hagler announced the Court was in recess and left the bench. The Show Cause Order states that Rogers called out to the Judge about a motion he had noticed for hearing, and the Judge indicated a desire to recess rather than hear it, at which time the Judge turned his back and Rogers threw his file on the table, made a vulgar gesture, and used the "f" word.  The Show Cause Order states Rogers did this in front others present in the courtroom, but the Judge did not see or hear it.

Further, the Show Cause Order states that Rogers then went to the Judge's chambers

and the Judge told him he did not like to be stopped while leaving the bench, but was always available in chambers, and that Rogers was very deferential. The Show Cause Order states that the Judge did not learn of Rogers' behavior until later that day, concludes that Rogers was guilty of contempt, and created a security risk for the judge.

Rogers filed a Response, and admitted the behavior but stated that he thought he said the expletive to himself. He stated that on January 26, 2007, he sent a letter to the Judge explaining his conduct and apologizing, but denied that he committed criminal contempt pursuant to Tenn. Code Ann. §29-9-102, and asked for the Show Cause Order to be dismissed.

A substitute judge was appointed to hear the case and at the hearing, Rhonda Cooley was the first witness. She testified that she was the clerk of the circuit court of McMinn County, and was sitting in the court with the Trial Judge, when about 10:55 a.m., the Judge told her he needed to take a short break and announced that he was taking a short recess. She testified that as he started off the bench, Rogers attempted to tell the Judge something, and the Judge put his arm out and said "I need a minute" and continued to exit. She testified that Rogers became agitated and shot a bird at the judge and said "f— you". She testified that she could see and hear this well from the clerk's bench.

She explained there were several people present in the courtroom when this happened, both attorneys and litigants, and that the Judge was at the threshold of the door when this occurred, but there was no disruption to the rest of the court docket.

The next witness was Judge Watson who testified that he had been a Sessions judge for McMinn County for 21 years, and that he knew Rogers, and knew Rogers had been very ill.

Sue Martin testified that she worked for the McMinn County Sheriff's Department, and was working in court on the day in question. Martin testified the Judge announced a recess, and as he was stepping across the threshold, Rogers shot him a bird and used the "f" word. Martin testified that other people were in the courtroom, and that the day before she had to help Rogers out of the courtroom in Chancery court because he was very ill.

Greg Walker testified that he was the court security supervisor, and that he was in charge of the security cameras, etc. He identified the DVD from the court security camera for that day. While the DVD has no audio, a review of the same shows Rogers throwing his file on the table in frustration.

Judge Hagler testified that when he called the docket that morning, there was a case involving Rogers and Parr, and he testified they said they thought they could work something out, and he told them to let him know as soon as possible. He later took a recess after an hour-long hearing, and Rogers called out to him as he was leaving the courtroom. Hagler testified that he didn't want to be stopped, so he simply put his hand up and indicated that Rogers could come to his chambers. Hagler testified that Rogers came to chambers almost immediately, and Judge Hagler

apologized for cutting him off, and told him he was simply trying to get out of the courtroom. Hagler testified that their conversation was cordial, and that when later in the day he was advised by the clerk and court officers of Rogers' behavior, he was very surprised.

Rogers was the next witness, and he testified that he had been licensed to practice law since 1978, had significant health problems, and had been very ill the day before. He testified that he was sick on the day in question, and thought he and Parr could agree to continue the case they had on the docket that day, so he told Judge Hagler that and Judge Hagler said, "well, let me know as soon as possible, Mr. Rogers, whether we can take this off the docket."

Rogers testified that after he talked to Parr, Parr asked him to tell the Judge to take the matter off the docket, and he had to wait because there was a matter being heard. He explained that he was feeling very ill, and testified that he had only sat there a few minutes, but it felt like forever, and he felt the need to get out of the courtroom before he "crashed". He testified that when Judge Hagler called recess, he said "may it please the court, Judge" as the judge was leaving the room, because he wanted to make his announcement and leave. He related that Judge Hagler held his hand up and waved it twice, and told him not to address him after he had declared a recess. Rogers further testified he thought it was rude how Judge Hagler "flagged me twice", and he tossed his file on the table, and muttered (he thought to himself) "what a f---- a----". He admitted he flipped a bird after the Judge was gone, as the door was closing, and concluded that he should not have done any of these things, and did not intend to disrupt anything, but was frustrated and ill.

Rogers testified that he was ashamed of his behavior, and that he went to Judge Hagler's chambers with the intent of apologizing, but Judge Hagler apologized for chiding him, and at that point he was too embarrassed to tell the Judge what he had done.

James Logan, Jr., the next witness, testified that he had known Rogers for 37 years, and that he practiced with Rogers. Logan testified he thought Rogers had always conducted himself professionally, and Rogers' behavior that day was very out of character.

The Trial Judge issued a Memorandum Opinion and Findings of Fact, wherein he found beyond a reasonable doubt that Rogers was guilty of criminal contempt in violation of Tenn. Code Ann. §29-9-102, and that his behavior was willful. The Court found that Rogers threw his file on the table, flipped a bird, and addressed Judge Hagler obscenely. The Court found that the court officer's testimony was credible regarding the fact that Judge Hagler was crossing the threshold at the time, and that there were several people in the courtroom. The Court held that Rogers' misbehavior affected the administration of justice, and this was sufficient to satisfy Rule 42 regarding notice. The Court found that *Black v. Blount*, 938 S.W.2d 394 (Tenn. 1996) controlled, and that even behavior which occurred outside the course of court proceedings was actionable. The Court assessed a $50.00 fine against Rogers, and sentenced him to 10 days in jail, but suspended the sentence.

On appeal, the appellant argues he was not given proper notice that he was being

charged with criminal contempt pursuant to Tenn. Code Ann. §29-9-102(2). Tenn. Code Ann. §29-9-102 lists the following as bases for contempt:

> (1) The willful misbehavior of any person in the presence of the court, or so near thereto as to obstruct the administration of justice;

> (2) The willful misbehavior of any of the officers of such courts, in their official transactions;.

Appellant argues the wording of the Show Cause Order only led him to believe that he would be charged under subsection (1), and not subsection (2).

Rule 42 of the Rules of Criminal Procedure states that a criminal contempt notice must state the time/place of hearing, allow the defendant a reasonable time to prepare a defense; and state the essential facts constituting the contempt charge. The Show Cause Order in this case set forth the essential facts regarding what transpired in court on the day in question, and makes clear that defendant was being charged with misbehavior in an official transaction, as it states that he was in court regarding a motion that had been noticed for hearing, that he called out to the Judge as he was leaving the bench, and that he then threw his file on the table, gestured vulgarly, and said the "f" word. The Trial Court properly found that defendant was given proper notice that he was being charged under both subsection (1) and subsection (2). We find this issue to be without merit.

Next, appellant argues that the evidence was insufficient to support the Trial Court's holding that he was guilty of criminal contempt causing an obstruction of the administration of justice. As the Supreme Court has explained, criminal contempt causing an obstruction of justice has "generally been defined as any willful misconduct which embarrasses, hinders, or obstructs a court in its administration of justice or derogates the court's authority or dignity, thereby bringing the administration of law into disrepute." *See Black v. Blount*. Criminal contempt has also been described as occurring "when the dignity and authority of the court has been offended." *Reed v. Hamilton*, 39 S.W.3d 115, 118 (Tenn. Ct. App. 2000).

When a defendant attacks the sufficiency of the evidence in a criminal contempt proceeding, we review the record "to determine if the proof adduced at trial supports the findings of the trier of fact of guilt beyond a reasonable doubt." *Black v. Blount*. We do not reweigh the proof offered at trial, rather, the "defendant has the burden of illustrating to the Court why the evidence is insufficient to support the verdict." *Id.* The Supreme Court went on to explain that, "[a] guilty verdict removes the presumption of innocence and it is replaced with a presumption of guilt. We will not disturb a verdict of guilt for lack of sufficient evidence unless the facts contained in the record and any inferences which may be drawn from the facts are insufficient, as a matter of law, for a rational trier of fact to find the defendant guilty beyond a reasonable doubt." *Id.*

In this case, the facts are not essentially in dispute. The defendant reacted angrily to the Court's proceeding with its recess by throwing his file. He also made a vulgar gesture and made

obscene comments at the Judge's back. The defendant also admits this behavior occurred. Such behavior by an officer of the court clearly offends the dignity and authority of the court, and can be said to embarrass the court in its administration of justice. Nor does the fact the Court called a recess and the Judge was leaving the bench when the conduct occurred, render the behavior excusable. The Supreme Court has made clear that even conduct which occurs outside a judicial proceeding can be actionable. *See Black*. Defendant has not disputed that the behavior he was charged with occurred. Thus, the Trial Court's contempt finding is affirmed. The costs of the appeal are assessed to Randy George Rogers.

_____
HERSCHEL PICKENS FRANKS, P.J.