# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
January 17, 2017 Session

## NANCY LYNN HOPPER v. ANTHONY ANGELO DEBBOLI

**Appeal from the Chancery Court for Rutherford County**
**No. 03-5930DR    Howard W. Wilson, Chancellor**

_____

**No. M2016-00861-COA-R3-CV – Filed February 8, 2017**

_____

Former Husband and Wife owned a business together while they were married. In a post-divorce order, the trial court decreed that the business was to be wrapped up and sold. Former Husband failed to comply with the order and Former Wife filed a motion for a temporary restraining order ("TRO") and a petition for civil contempt. The court granted Former Wife a TRO but did not rule on the petition for contempt. Former Wife filed a motion to set a hearing on her petition for contempt two years later, and the trial court dismissed the motion as moot. Former Wife appealed, and we reverse the trial court's judgment. We conclude that this Court lacks subject matter jurisdiction over this appeal because the trial court failed to resolve all outstanding issues in the case.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Reversed and Remanded**

ANDY D. BENNETT, J., delivered the opinion of the court, in which FRANK G. CLEMENT, JR., P.J., M.S., and RICHARD H. DINKINS, J., joined.

Robert J. Foy, Murfreesboro, Tennessee, for the appellant, Nancy Lynn Hopper.

Sandra L.M. Smith, Murfreesboro, Tennessee, for the appellee, Anthony Angelo Debboli.

# MEMORANDUM OPINION[1]

## FACTUAL AND PROCEDURAL BACKGROUND

Nancy Lynn Hopper and Anthony Angelo Debboli were married from 1990 until May 2003. The final order of divorce incorporated a Marital Dissolution Agreement ("MDA") that contemplated the continuation of their business, Aristocat Resort. The trial court entered an order ten years later, on August 29, 2013, directing Mr. Debboli to wrap up the business within the following three months. The trial court awarded Ms. Hopper control over the sale of the business, and the proceeds were to be split evenly.

On February 18, 2014, Ms. Hopper filed a motion for a TRO or injunction and a petition for contempt and/or enforcement based on Mr. Debboli's failure to wrap up the business as the trial court ordered on August 29, 2013. In her motion for a TRO, Ms. Hopper asked the court to enjoin Mr. Debboli from exercising possession or control over Aristocat Resort. In her petition for contempt, Ms. Hopper asked the court to find Mr. Debboli in willful civil contempt and to impose sanctions; to enforce the order for sale of the business; to award her a judgment for net profits earned; and to award her reasonable attorney's fees and costs.

The trial court held a hearing on March 14, 2014, and it issued an order granting Ms. Hopper a TRO on April 7, 2014. The court ordered that Mr. Debboli:

> shall be restrained from acting, through an agent or otherwise, in any way to contravene the order of August 29, 2013. More specifically, [Mr. Debboli] shall be restrained from operating Aristocat Resort and assets of that business, the building, the equipment, and any other asset of that business.

The court did not mention Ms. Hopper's petition for contempt or the relief she sought either at the hearing or in its written order, but the judge told Ms. Hopper's attorney at the hearing, "Mr. Foy, I'll grant that motion to the extent you've suggested. We'll deny the balance of the relief."

---

[1]Tennessee Court of Appeals Rule 10 states:

> This Court, with the concurrence of all judges participating in the case, may affirm, reverse or modify the actions of the trial court by memorandum opinion when a formal opinion would have no precedential value. When a case is decided by memorandum opinion it shall be designated "MEMORANDUM OPINION," shall not be published, and shall not be cited or relied on for any reason in any unrelated case.

The trial court appointed a special master to sell the parties' business, Aristocat Resort, and the business was sold at auction in August 2014. Following the sale of the business, the trial court entered an order on August 27, 2014, directing that Mr. Debboli be paid $94.00 from the net proceeds of the auction due to an early termination fee of his cell phone contract that he incurred when the business was sold. The court entered another order the following day directing the clerk and master to distribute the net proceeds of the business equally to the parties after the payment of associated costs.

Then, on August 20, 2015, nearly a year later, Ms. Hopper filed a motion to set a final hearing on the petition for contempt and/or enforcement she filed in February 2014 to address "unresolved" issues. The court held a hearing on January 13, 2016, and it denied Ms. Hopper's motion by order entered on March 11, 2016. During the hearing on January 13, the following colloquy occurred:

> THE COURT: My concern is why wasn't the petition for contempt addressed when - - before Chancellor put down the August 27th, 2014 order.
> The order for contempt involves the sale of this property. The order of the 27th of 2014 seems to wrap up those issues.
>
> MR. FOY: Well, Your Honor, I would just state to the Court that the issue of contempt was never directly addressed. . . .
>
> THE COURT: So, what are you asking me to hold him in contempt for? What did he do?
>
> MR. FOY: Your Honor, we're going to address this today. But we are going to put on testimony that his contemptuous acts are still on-going as of today, as we sit here today. That he is still operating the business under an assumed name. And also, Your Honor, the issue of damages has not been addressed either, as I would state that -- as I stated in the *Overnite* case, damages can be assessed even after the cessation of the contemptuous action.
>
> THE COURT: I guess my real concern is, though, why wasn't all this done before the Chancellor ruled in August of 2014?
>
> MR. FOY: And, Your Honor, the only issue [. . .] we were there in August of 2014 [. . .] on a motion to approve the sale of the -- the auction sale. That

was the only issue. The petition for contempt was never set for final hearing.

THE COURT: All right.

The trial court denied Ms. Hopper's motion to set a hearing on her petition for contempt. In its order dated March 11, 2016, the court wrote:

> This matter is before the Court upon request of the Petitioner/Mother for findings of contempt and for sanctions, alleging that there is no final order entered. The Court finds that all matters of contempt and sanctions were addressed by the Court in Its Order of April 7, 2014. Specifically, the Court found contempt and placed certain injunctions upon Respondent/Father. The Court did not specifically address sanctions, but also did not reserve sanctions either. The issue did not arise in any following Motions or hearings before the Court.

> Thereafter, the Court entered Its Order of August 27, 2014 which was Enforcement of the sale of the business. The only action following, other than the present Motion, was the Order which approved distribution of the proceeds of the business following auction.

> Therefore, the Court finds that the Order of August 27, 2014 was a final order, that all matters before the Court in the Petition for Contempt and/or Enforcement have been addressed and resolved by Order.

> The Court further finds that the Motion before the Court is Moot and is Dismissed.

Ms. Hopper appeals the trial court's dismissal of her motion. She also seeks an award of the attorney's fees she has incurred on appeal.

ANALYSIS

A trial court's determination that a request for a hearing is moot is a legal conclusion, which appellate courts review de novo, with no presumption of correctness granted to the trial court. *State ex rel. DeSelm v. Jordan*, 296 S.W.3d 530, 533 (Tenn. Ct. App. 2008); *see Reed v. Hamilton*, 39 S.W.3d 115, 117 (Tenn. Ct. App. 2000) (stating appellate court reviews trial court's legal conclusions de novo).

However, before we engage in a substantive review of the trial court's judgment, we must determine whether we have subject matter jurisdiction to adjudicate this appeal.

- 4 -

A court's subject matter jurisdiction emanates from the Tennessee Constitution or from the legislature and determines whether a court has the authority to rule on a particular controversy. *Dishmon v. Shelby State Cmty. Coll.*, 15 S.W.3d 477, 480 (Tenn. Ct. App. 1999). The issue of subject matter jurisdiction can be raised at any time, by either the parties or *sua sponte*, by a court on appeal. *Earls v. Mendoza*, No. W2010-01878-COA-R3-CV, 2011 WL 3481007, at \*5 (Tenn. Ct. App. Aug. 10, 2011).

"The Court of Appeals does not have subject matter jurisdiction over orders that are not final" unless one of the parties has obtained permission to appeal under Rule 9 or 10 of the Tennessee Rules of Civil Procedure. *City of Jackson v. Hersh*, No. W2008-02360-COA-R3-CV, 2009 WL 2601380, at \*3 (Tenn. Ct. App. Aug. 25, 2009). A final order or judgment "resolves all the issues in the case, 'leaving nothing else for the trial court to do.'" *In re Estate of Henderson*, 121 S.W.3d 643, 645 (Tenn. 2003) (quoting *State ex rel. McAllister v. Goode*, 968 S.W.2d 834, 840 (Tenn. Ct. App. 1997)); *see also Harness v. Harness*, No. E2012-02469-COA-R3-CV, 2013 WL 6155872, at \* 3 (Tenn. Ct. App. Nov. 21, 2013). According to Tennessee Rule of Civil Procedure 54.02,

> [A]ny order or other form of decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of the judgment adjudicating all the claims and the rights and liabilities of all the parties.

Similarly, Tennessee Rule of Appellate Procedure 3(a) provides that when multiple claims for relief are involved in an action,

> any order that adjudicates fewer than all the claims . . . is not enforceable or appealable and is subject to revision at any time before entry of a final judgment adjudicating all the claims, rights, and liabilities of all parties.

*See also Estate of Henderson*, 121 S.W.3d at 645 ("an order that adjudicates fewer than all of the claims, rights, or liabilities of all the parties is not final, but is subject to revision any time before the entry of a final judgment") (citing TENN. R. APP. P. 3(a)).

Turning to the facts at hand, we note that Ms. Hopper filed a motion for contempt on February 18, 2014, which was the same day that she filed a motion for a TRO. In her motion for contempt, Ms. Hopper alleged that Mr. Debboli had failed to comply with the trial court's order dated August 29, 2013, which required Mr. Debboli to wrap up the parties' Aristocat Resort business within three months and determined that Ms. Hopper would control the sale of the business. Ms. Hopper asserted the following in paragraph 7 of her petition:

[Mr. Debboli] has failed to "wrap up" the business, and upon information and belief, continues to operate the business without any intention of selling the business. Moreover, despite the parties' agreement that [Ms. Hopper] can "value" and "control" the sale, [Mr. Debboli] refuses to cooperate with [Ms. Hopper] so that she can actually value the business. [Mr. Debboli] has repeatedly refused or ignored requests for financial records, customer lists, and/or tax information. Due to the same, [Ms. Hopper] has been unable to properly value the business, and market it to potential customers.

Ms. Hopper averred in her motion that Mr. Debboli's actions caused her to incur unnecessary attorney's fees and costs. In her request for relief, Ms. Hopper asked the trial court, *inter alia*, to find Mr. Debboli in "willful civil contempt" and to award her reasonable attorney's fees and costs.

Mr. Debboli filed an answer to Ms. Hopper's motion for contempt on March 7, 2014, in which he responded to each allegation Ms. Hopper set forth in her motion. The record shows that the trial court held a hearing on March 14, 2014, but this hearing was limited to Ms. Hopper's motion for a TRO. Nowhere in the order granting Ms. Hopper a TRO, or in the transcript of the hearing that was incorporated into the order, did the trial court mention Ms. Hopper's petition for contempt.[2]

During the TRO proceedings, the trial court appointed a special master to assist with the sale of Aristocat Resort. The parties were back in court on several occasions following the TRO hearing with regard to the special master's report and the auction of the business as well as other issues unrelated to the business, having to do with modifications of child support and the parties' parenting plan. The issues regarding child support and modification of the parenting plan were not resolved until April 17, 2015. Then, a few months later, on August 20, 2015, Ms. Hopper moved for an order setting a hearing on her petition for contempt that was filed on February 18, 2014. In her motion, Ms. Hopper explained that "all issues in the Petition for Contempt and/or Enforcement have not yet been resolved by this Court."

The trial court entered an agreed order to set the contempt matter for trial on January 13, 2016, and both parties filed a witness and exhibit list for the final hearing in the case. When the parties appeared in court on January 13, 2016, the trial court asked why the petition for contempt was not addressed earlier, when assets of the business were being distributed. Ms. Hopper's attorney responded that the only issue before the court in August 2014 related to the auction of the business and whether it should be approved. Ms. Hopper's attorney explained that "[t]he petition for contempt was never set for final hearing."

---

[2]Indeed, the trial court's order starts off: "This matter having come before the Court on Former Wife's Motion for Temporary Restraining Order or Injunction . . . ."

Contrary to the trial court's order entered on March 11, 2016, we conclude the order entered on August 27, 2014, was *not* a final order, and that all matters alleged in the petition for contempt were *not* addressed and resolved by that order. "To be a final order, all of the claims and the rights and liabilities of the parties must be resolved." *City of Jackson*, No. 2009 WL 2601380, at *3. It is clear that Ms. Hopper's contempt petition was neither addressed nor resolved when the trial court dismissed Ms. Hopper's motion to set the hearing in August 2015. As a result, we have no choice but to conclude that there is not a final appealable order in this case and that we lack subject matter jurisdiction to hear this appeal.[3] *See* TENN. R. CIV. P. 54.02; TENN. R. APP. P. 3(a).

CONCLUSION

The trial court's judgment dismissing Ms. Hopper's motion as moot is reversed and the case is remanded to the trial court for further proceedings consistent with this opinion. Costs shall be assessed against the appellee, Anthony Angelo Debboli, for which execution shall issue, if necessary.

_____

ANDY D. BENNETT, JUDGE

---

[3]In light of the fact that we lack subject matter jurisdiction to hear this appeal, we are not in a position to determine whether Ms. Hopper is entitled to recover the attorney's fees and costs she has incurred on appeal. Upon remand, however, Ms. Hopper will have the opportunity to request her attorney's fees incurred both at the trial level as well as on appeal as compensatory damages for civil contempt. *See Reed*, 39 S.W.3d at 119.