IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
SEPTEMBER 16, 2008 Session

HENRY COUNTY, TENNESSEE, OPERATING THROUGH ITS ADULT
ORIENTED ESTABLISHMENT BOARD
v. CHARLES REDDEN, d/b/a "The Foxy Lady" and d/b/a "The Sugar
Shack" and ROGER INMAN d/b/a "The Office"

Direct Appeal from the Circuit Court for Henry County
No. 3012     Donald E. Parish, Judge

No. W2008-00198-COA-R3-CV - Filed December 31, 2008

In this appeal, we are asked to determine: (1) whether there existed sufficient evidence to support the circuit court's finding Appellant guilty of indirect criminal contempt; (2) whether the circuit court erred in finding Appellant "willfully attempt[ed] to circumvent the requirements of the Act and Injunction Order of the Court[;]" and (3) whether the circuit court erred in fining Appellant for fifty contemptuous acts when the exact number of such acts is uncertain.  We affirm.

Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Circuit Court Affirmed

ALAN E. HIGHERS, P.J.,W.S., delivered the opinion of the court, in which DAVID R. FARMER, J., and HOLLY M. KIRBY, J., joined.

A. Russell Larson, Jackson, TN, for Appellant Charles Redden d/b/a "The Foxy Lady" and d/b/a "The Sugar Shack"

Lee M. Greer, III, Paris, TN, for Appellee Henry County Operating Through Its Adult Oriented Establishment Board

OPINION

## I. FACTS & PROCEDURAL HISTORY

On August 24, 2007, Henry County, Tennessee, operating through its Adult-Oriented Establishment Board ("Appellee" or "Henry County") filed a Complaint in the Henry County Circuit Court seeking injunctive relief pursuant to Tennessee Code Annotated section 7-51-1101 *et seq.*, the "Adult-Oriented Establishment Registration Act of 1998" (the "Act"). Specifically, the Complaint alleged that Charles Redden, d/b/a "The Foxy Lady" and "The Sugar Shack," and Roger Inman, d/b/a "The Office" (collectively, the "Defendants"), operated "adult-oriented establishments" as defined by section 7-51-1102(6) of the Act, without obtaining the necessary permits. The Complaint explained that Henry County resolved, on May 17, 2003, to bring itself under the permissive legislation of the Act. Subsequently, "the owners of the various businesses identified as 'adult[-]oriented establishments' were notified that the law required them to make application to the Adult[-]Oriented Establishment Board . . . for a permit[;]" the deadline for which Appellee claims it extended at least twice for the Defendants' benefit. For a period of time Appellee voluntarily suspended enforcement of the Act, due to pending Federal litigation; however, after the constitutionality of the Act was upheld,[1] Appellee voted to resume enforcement of the Act, and again, notified those affected. When Defendants failed to apply for a permit, Appellee extended the deadline to expire at midnight, August 12, 2007, which Appellee alleges the Defendants did not heed. On August 24, 2007, Appellee filed a Complaint seeking injunctive relief against the Defendants. Attached to the Complaint were the Affidavit[s] in Support of Temporary Restraining Order of both the Henry County Sheriff and a Henry County Sheriff's deputy describing conduct in violation of the Act. The Sheriff's Affidavit stated:

> On or about August 3, 2007, I went to the establishment known as "The Sugar Shack[.]" I observed an entertainer dancing in a semi-nude state. Her full buttocks were exposed, [and] part of her genitalia was exposed. She was dancing within six feet of patrons. The establishment was also serving beer or allowing beer and other alcohol to be consumed on the premises. . . .
> As sheriff I have also supervised the activities of other law enforcement personnel, including undercover personnel, who made investigations at other establishments including "The Office" and "The Foxy Lady[.]"

Further, the Affidavit of the Sheriff's Deputy stated:

> On or about August 17, 2007[,] I made an investigation at . . . "The Office[.]" At that time, I observed nude dancing. I observed alcohol being served and/or consumed on the premises. I observed a nude dancer being within six feet of patrons.

---

[1] *See **Odle v. Decatur County, Tenn.**,* 421 F.3d 386 (6th Cir. 2005) (holding that the Act was not an unconstitutional prior restraint on protected expression).

On or about August 18 and again on August 19, 2007, I made an investigation at . . . "The Foxy Lady[.]"

On those dates I observed nude dancing being performed by dancers in a nude or semi-nude state. I observed alcohol being consumed on the premises. Observed the dancers being within six feet of the patrons.

The circuit court issued an ex parte temporary Restraining Order on August 24, 2007, ordering:

> that the [D]efendants . . . [and] their agents, successors, deputies, servants, employees, and all persons acting by, to or under them, or either of them or by or through their order, be, and they are, hereby restrained from: engaging in any act constituting "adult[-]oriented entertainment" as that term is defined in [Tennessee Code Annotated section] 7-51-1101 *et seq*. Such prohibition including, but not being limited to, nude or semi-nude dancing, "table dances[,]" "lap dances[,]" and all other forms of adult oriented entertainment as defined by law.[2]

Following an injunction hearing on August 31, 2007, the circuit court entered an Order Granting Temporary Injunction, thus extending the August 24, 2007 Restraining Order "until such time as [] Defendant shall obtain a proper permit from the Henry County Adult Oriented Establishment Board."

On September 19, 2007, Appellee filed a Motion for Contempt in the circuit court, alleging that Charles Redden d/b/a "The Foxy Lady" and "The Sugar Shack" ("Appellant"), violated the August 31, 2007 Temporary Injunction by exhibiting "adult-oriented entertainment." Attached to Appellee's Motion was an Affidavit of undercover police officer Chad Davis. Officer Davis stated that on September 14 and September 15, 2007, he presented himself at "The Foxy Lady" where he, along with other uncover officers, observed:

> [e]ntertainers at the [Appellant's] business [] engaged in semi-nude dancing where they were clothed in only "pasties" and bikini bottoms. The entertainers would fondle or rub themselves in a provocative and sexually explicit manner. On several occasions entertainers who had danced in a semi-nude state would then sit on the laps of customers, or otherwise come within six feet of customers of the establishment.

---

[2] "'Adult entertainment' means any exhibition of any adult-oriented motion picture, live performance, display or dance of any type, that has as a principal or predominant theme, emphasis, or portion of such performance, any actual or simulated performance of specified sexual activities or exhibition and viewing of specified anatomical areas, removal of articles of clothing or appearing unclothed, pantomime, modeling, or any other personal service offered customers[.]" **Tenn. Code Ann. § 7-51-1102(3) (Supp. 2007)**.

[Officer Davis] also observed beer and other alcohol being consumed on the premises[.]

On October 16, 2007, an evidentiary hearing concerning the contempt petition was held before the circuit court. [3] At that hearing, "[t]he Court heard the testimony of Officer Davis, Sheriff Monte Belew and Charles Redden." Additionally, "[t]hrough Officer Davis, a . . . (DVD), was introduced which depicted the activities inside 'The Foxy Lady' during the two hours which the undercover officers were present."[4] According to the circuit court:

> [i]t is self evident from the DVD that the two entertainers present at "The Foxy Lady" on September 14, 2007, committed the following acts which were prohibited by the injunction order: (1) semi-nude dancing; (2) exhibition of the female breast below a point immediately above the top of the areola; (3) erotic touching of the pubic region, buttocks or female breasts; and (4) a performance which has as a predominant theme the viewing of the female breasts in an erotic fashion.

Thus, following this hearing, in its Findings and Order on Motion for Contempt ("Findings and Order"), the circuit court found Appellant in indirect criminal contempt and assessed a $50.00 fine against him for each of the "at least fifty" acts of contempt.[5] It is from this Order that Appellant appeals to this Court.

## II. ISSUES PRESENTED

---

[3] A transcript of such hearing was not included in the Record; however, the Circuit Court entered its Findings and Order on Motion for Contempt.

[4] Appellant's Brief claims the trial judge viewed only a portion of the DVD, while Appellee's Brief claims he viewed the DVD in its entirety. The circuit court's Minute Entry of October 16, 2007 states that the court took the cause under advisement "after hearing [the] contempt petition [and] live witnesses and having viewed *portions* of [the DVD.]" (emphasis added).

[5] On December 12, 2007, the trial court entered an Order on Show Cause Notice and Order on Motion for Alteration or Amendment of Judgment "further memoraliz[ing] the findings and directive of the Court following the October 16, 2006, evidentiary hearing[,] as "counsel for both parties were of the opinion that the Finding and Order of October 17, 2007, were not intended to be a final order which complied with Rule 58 TRCP."

-4-

Appellant has timely filed his notice of appeal and presents the following issues for review, summarized as follows:[6]

1.      Whether there was sufficient evidence to support the trial court's contempt finding;

2.      Whether the court erred in finding Appellant "willfully attempt[ed] to circumvent the requirements of the . . . Injunction Order of the Court[;]" and

3.      Whether the court erred in imposing fines when the exact number of contemptuous acts is uncertain.

For the following reasons, we affirm the decision of the circuit court.


## III.  DISCUSSION

### A.  *Sufficiency of Evidence*

In its Findings and Order, the trial court found Appellant in indirect criminal contempt for "willfully attempting to circumvent the requirements of the . . . Injunction Order of the Court."[7]  The trial court stated that "conservatively speaking, the number of such prohibited acts would equal at least fifty."  However, on appeal, Appellant asserts that this finding was in error, as "a review of the DVD will not show fifty instances of contempt or violations of the [Act.]"

"Tennessee courts have the inherent authority and discretion to punish for acts of contempt." ***Outdoor Mgmt., LLC v. Thomas***, 249 S.W.3d 368, 376 (Tenn. Ct. App. 2007) (citing *Reed v. Hamilton*, 39 S.W.3d 115, 117 (Tenn. Ct. App. 2000)).  However, such a finding can only be made for conduct described in Tennessee Code Annotated section 29-9-102. ***Id.*** (citing *Black v. Blount*, 938 S.W.2d 394, 397-98 (Tenn. 1996)).  Among the conduct for which courts may punish as contempt is "[t]he willful disobedience or resistance of any officer of the said courts, party, juror, witness, or any other person, to any lawful writ, process, order, rule, decree, or command of such courts."[8] ***Id.*** (quoting Tenn. Code Ann. § 29-9-102(3)).  The Tennessee Code's language is clear as to the two elements required for a contempt finding under section 29-9-102(3): (1) willful

---

[6] Although the portion of Appellant's Brief entitled "Statement of Issues Presented for Review" only lists two issues, Appellant attempts to raise three issues in his "Argument" section.

[7] Pursuant to Tennessee Code Annotated section 29-9-102(3), a court may "inflict punishment for contempts of court" for "[t]he willful disobedience or resistance of any officer of the such courts, party, juror, witness, or any other person, to any lawful writ, process, order, rule, decree, or command of such courts[.]"

[8] Although the Act contains a provision authorizing a contempt proceeding for those who have qualified under the Act, Appellant claimed that his activity was not subject to the Act, and therefore the contempt provision did not apply to him.  Thus, both parties agreed that the contempt proceeding should be governed by Tennessee Code Annotated section 29-9-101 *et seq*.

disobedience or resistance, and (2) a lawful writ, process, order, rule, decree, or command of such courts. *Id*. (citing Tenn. Code Ann. § 29-9-102(3); *State v. Winningham*, 958 S.W.2d 740, 745 (Tenn. 1997)).

Contempt may be either direct or indirect; criminal or civil in nature. "Direct contempt is based upon acts committed in the presence of the court, and may be punished summarily." ***State v. Maddux***, 571 S.W.2d 819, 821 (Tenn. 1978) (citations omitted). However, "[i]ndirect contempt is based upon acts not committed in the presence of the court, and may be punished only after the offender has been given notice, and the opportunity to respond to the charges at a hearing."[9] ***Id.*** (citations omitted). "Criminal contempt actions are those to preserve the power and vindicate the dignity of the court while civil contempt actions are those brought to enforce private rights." ***Robinson v. Air Draulics Eng'g Co.***, 377 S.W.2d 908, 912 (Tenn. 1964) (citations omitted).

In cases of criminal contempt, the guilt of the accused must be initially established beyond a reasonable doubt. ***Memphis Health Ctr., Inc. ex rel. Davis v. Grant***, No. W2004-02898-COA-R3-CV, 2006 WL 2088407, at *14 (Tenn. Ct. App. July 28, 2006) (citing *Black v. Blount*, 938 S.W.2d 394, 398 (Tenn. 1996); *Robinson*, 377 S.W.2d at 912). "However, on appeal, individuals convicted of criminal contempt lose their presumption of innocence and must overcome the presumption of guilt." ***Id.*** "Appellate courts do not review the evidence in a light favorable to the accused and will reverse criminal contempt convictions only when the evidence is insufficient to support the trier-of-fact's finding of contempt beyond a reasonable doubt." ***Id.*** (citing Tenn. R. App. P. 13(e); *Thigpen v. Thigpen*, 874 S.W.2d 51, 53 (Tenn Ct. App. 1993)). "Furthermore, appellate courts review a trial court's decision of whether to impose contempt sanctions using the more relaxed abuse of discretion standard of review." ***Id.*** (citing *Hawk v. Hawk*, 855 S.W.2d 573, 583 (Tenn. 1993)).

In the instant case, Appellant was found to be in indirect criminal contempt of the circuit court's Injunction Order. In so finding, the trial court relied upon the DVD "which depicted the activities inside 'The Foxy Lady' during the two hours which the undercover officers were present." According to the trial court's Findings and Order, Officer Davis's testimony described "various acts which he observed which were in violation of the restraining order[, . . . . and] [t]hese same acts [were] plainly visible on [the DVD]." Further, the trial court stated that:

> [i]t is self evident from the DVD that the two entertainers present at "The Foxy Lady" on September 14, 2007, committed the following acts which were prohibited by the injunction order:
>
> (1) semi-nude dancing;
> (2) exhibition of the female breast below a point immediately above the top of the areola;

---

[9] According to the circuit court's Findings and Order, "[Appellant was] afforded the constitutional procedural safeguards to which he [was] due." Appellant has not alleged a failure to afford such safeguards on appeal.

(3) erotic touching of the pubic region, buttocks or female breasts; and

(4) a performance which has as a predominant theme the viewing of the female breasts in an erotic fashion.

The two entertainers committed so many such individual acts during the two hour surveillance as to be difficult to number. However, conservatively speaking, the number of such prohibited acts would equal at least fifty. [Appellant] is responsible for their misconduct.

Moreover, [Appellant] was on September 14, 2007, engaging in the operation of an adult oriented establishment as is prohibited by the Act without proper registration. He is willfully attempting to circumvent the requirements of the . . . the Injunction Order of the Court.

Appellant carries the burden of providing this Court with a transcript of the evidence or a statement of the evidence from which this Court can determine whether sufficient evidence was presented such that the trial court could find Appellant in criminal contempt beyond a reasonable doubt. Because Appellant failed to include in the record a transcript or statement of the evidence of the contempt hearing, "we must assume that the record, had it been preserved, would have contained sufficient evidence to support the trial court's findings." *Murphy v. Resurgence Fin.*, LLC, W2008-00197-COA-R3-CV, 2008 WL 4457063, at *2 (Tenn. Ct. App. Oct. 2, 2008) (citing Sherrod v. Wix, 849 S.W.2d 780, 783 (Tenn. Ct. App. 1992)). However, even without this presumption, we find sufficient evidence in the sparse record, which included the trial court's Findings and Order and the DVD presented at the contempt hearing, to support the trial court's finding of contempt beyond a reasonable doubt.

## B.    Willfulness

Next, Appellant maintains that "there was no proof that he had intentionally or willfully disobeyed [the court's order,] or that he [did] anything but notify the independent contractors as to the standards which they were to perform under [] the Court's prior order and the [s]tate [s]tatute[.]" We find this claim without merit. In its Findings and Order, the trial court explicitly found that "[Appellant] . . . willfully attempt[ed] to circumvent the requirements of the . . . Injunction Order of the Court." Again, because Appellant failed to include a transcript or a statement of the evidence, "we must assume that the record, had it been preserved, would have contained sufficient evidence to support the trial court's findings." *Murphy*, 2008 WL 4457063, at *2 (citing Sherrod v. Wix, 849 S.W.2d 780, 783 (Tenn. Ct. App. 1992)).

## C.    Number of Contemptuous Acts

Finally, Appellant asserts that the circuit court erred in imposing fines on Appellant when the exact number of contemptuous acts was uncertain. We will not consider this issue as Appellant has failed to present a sufficient argument concerning this matter.

Tennessee Rule of Civil Procedure 27(a) provides that an appellant's brief:

> shall contain . . . [a]n argument, which may be preceded by a summary of argument, setting forth the contention of the appellant with respect to the issues presented, and the reasons therefor, including the reasons why the contentions require appellate relief, with citations to the authorities and appropriate references to the record . . . relied on[.]

"Courts have routinely held that the failure to make appropriate references to the record and to cite relevant authority in the argument section of the brief as required by Rule 27(a)(7) constitutes waiver of that issue." *Bean v. Bean*, 40 S.W.3d 52, 55-56 (Tenn. Ct. App. 2000) (citing *State v. Schaller*, 975 S.W.2d 313, 318 (Tenn. Crim. App. 1997); *Rampy v. ICI Acrylics, Inc.*, 898 S.W.2d 196, 210 (Tenn. Ct. App. 1994); *State v. Dickerson*, 885 S.W.2d 90, 93 (Tenn. Crim. App. 1993)). "It is not the function of the appellate court to research and construct the parties' arguments." *Newcomb v. Kohler Co.*, 222 S.W.3d 368, 400 (Tenn. Ct. App. 2006) (citing *United States v. Berkowitz*, 927 F.2d 1376, 1834 (7th Cir. 1991)). "The failure of a party to cite to any authority or to construct an argument regarding his position on appeal constitutes waiver of that issue." *Id.* at 401 (citing *Rector v. Halliburton*, No. M1999-02802-COA-R3-CV, 2003 WL 535924, at *9 (Tenn. Ct. App. Feb. 26, 2003) (per curiam); *Rhea County v. Town of Graysville*, No. E2001-02313-COA-R3-CV, 2002 WL 1723681, at *7 (Tenn. Ct. App. July 25, 2002)).

On appeal, Appellant's only attempt at an argument on this issue comes in the "Argument" section of his Brief, which states:

> Appellant would submit to the Court that it is necessary for the orderly administration of justice and future maintenance of the Court's authority, to specifically state each and every act upon which the Court finds a criminal contempt and not to simply say, 'at least fifty acts' when imposing criminal contempt penalties.
> Accordingly, the Appellant would respectfully submit that the Trial Court does have the authority to impose punishment for criminal contempts, but also has a duty to specifically set out each act of willful contempt prior to the imposition of punishment. It is simply not enough to say "more than fifty acts[.]"

These statements do not provide the "argument" and "citation to the authorities" required by Tennessee Rule of Appellate Procedure 27(a). Thus, we find, under Tennessee Rule of Appellate

Procedure 27(a), that Appellant has waived his right to have the issue of the imposition of fines for contemptuous conduct absent an exact number of such acts considered by this Court.

## IV.  CONCLUSION

For the aforementioned reasons, we affirm the decision of circuit court.  Costs of this appeal are taxed to Appellant, Charles Redden, d/b/a "The Foxy Lady" and d/b/a "The Sugar Shack," and his surety, for which execution may issue if necessary.

_____
ALAN E. HIGHERS, P.J., W.S.