IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
November 13, 2012 Session

## PAM LOWERY AND DEBBIE NELSON
v.
## ROBERT MCVEY

**Appeal from the Chancery Court of Marion County**
**No. 7307    Jeffery F. Stewart, Chancellor**

**No. M2012-00555-COA-R3-CV - Filed February 11, 2013**

This case involves monetary damages for contempt of court. The respondent owned a parcel of land as tenants in common with his brother. When the brother died, the deceased brother's children inherited his interest in the property. The deceased brother's daughters filed this petition against the respondent to partition the property. The trial court entered an order equitably dividing the property between the respondent and the two petitioner sisters and requiring the respondent to remove personal property, junk, and debris he had placed on the parcel awarded to the sisters. The respondent was found in contempt for failing to remove the debris, and again ordered to do so. Apparently unhappy with this order, the respondent proceeded to remove, damage, or destroy fixtures and structures on the property awarded to the sisters, including a pole barn, several sheds, and a garage with an apartment. He also failed to remove the junk and debris as specified in the trial court's order. The petitioner sisters filed a second petition for contempt and sought contempt damages for the harm done to the buildings, fixtures, and structures. The trial court found the respondent in contempt a second time, based on his continued failure to remove the junk and debris. However, the trial court declined to award contempt damages to the petitioner sisters under T. C. A. § 29-9-105 for the destruction of the structural improvements on the property, finding that it was not within the parameters of the trial court's initial order. The petitioner sisters appeal. Discerning no error, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court is Affirmed**

HOLLY M. KIRBY, J., delivered the opinion of the Court, in which ALAN E. HIGHERS, P.J., W.S., and DAVID R. FARMER, J., joined.

Jerry B. Bible, Jasper, Tennessee for Petitioner/Appellants Pam Lowery and Debbie Nelson

L. Thomas Austin, Dunlap, Tennessee for Respondent/Appellee Robert McVey

## OPINION

### FACTS AND PROCEEDINGS BELOW

The facts in this case are generally undisputed. For many years, Herman McVey and his brother, Respondent/Appellee Robert McVey ("McVey"), owned as tenants in common approximately 26 acres of land in Marion County, Tennessee. A spring ran through the property, and on it was the family homeplace, a large 50x70 pole barn, several sheds, and a 24x30 garage with a second story finished apartment that was leased to a tenant. McVey had livestock and horses on the property, a camper that housed another tenant, and scrap metal and various items of personal property. The land was also littered with McVey's junk and debris.

After Herman McVey died, his undivided one-half interest in the property was inherited by Herman's son and his daughters, Petitioner/Appellants Pam Lowery and Debbie Nelson ("Sisters"). Any efforts made by the Sisters to persuade McVey to divide the property amicably, and to remove his personal property, junk and debris from their portion of the property, were apparently unavailing.

Consequently, in June 2008, the Sisters filed the instant petition against McVey in the Chancery Court of Marion County, Tennessee. The Sisters' petition sought to either partition the subject property, that is, physically divide it equitably with McVey, or sell it in lieu of partition.[1] The petition asserted that the Sisters had engaged in fruitless attempts to persuade McVey to remove from the property "tons of unsightly refuse, garbage, junk, scrap metal, cars, campers and other items which spawn mosquitoes and house snakes and rodents," all of which were purportedly put on the property by McVey. The petition asked the trial court to order McVey to remove all of these items, clean the property, and properly house his "dogs, chickens, guineas and other fowls" to keep them from roaming on the Sisters' portion of the property.

McVey's answer agreed to the partition of the subject property and said there was no need to sell it. He denied the Sisters' allegations regarding the personal items, junk, and debris on the

---

[1]Herman McVey's son was joined in the lawsuit, in order to have before the trial court all parties with an interest in the subject property. He executed a limited power of attorney in favor of the Sisters authorizing them to act on his behalf in the litigation.

property. In November 2009, the trial court ordered a survey of the land and appointed a special master to make a recommendation to the trial court on the equitable division of the property.

In January 2010, the special master issued his report to the trial court, containing his findings and recommendations. The special master determined that the tract of land was 25.94 acres and recommended dividing it into four plats, with a total of 12.62 acres to McVey and the remaining 12.34 acres to the Sisters. The two plats to be awarded to McVey included the spring and the family homeplace. The two plats the special master recommended awarding to the Sisters included the large pole barn, the garage with the second story finished apartment, and several sheds. Consistent with the allegations in the Sisters' petition, the special master recommended that the trial court give McVey six months to remove "all unsightly refuse, garbage, junk, scrap metal, cars, campers and other items owned by him" from the parcels awarded to the Sisters, 30 days to remove his livestock, and 30 days to evict tenants or any other persons living on the Sisters' parcels. McVey filed a timely objection to the special master's report and requested a hearing.

In July 2010, the trial court held an evidentiary hearing on the special master's recommendations, at which the special master explained the basis for his recommendations.[2] After the hearing, the trial court overruled McVey's objection and confirmed the report of the special master. However, instead of six months, the trial court gave McVey 60 days to remove his personal property, junk, and debris on the parcel awarded to the Sisters:

> Mr. McVey shall have sixty (60) days from the entering of this Order to have all his personal property and/or trash removed from Tracts 1 and 4 which have been awarded to the [Sisters]. The Court will entertain a request for an extension of time to remove personal property and/or trash and debris upon good cause being shown.

This order was entered on August 11, 2010.

McVey was apparently not moved to action by the August 2010 order. On November 29, 2010, the Sisters filed a motion to hold McVey in contempt of court for, *inter alia*, failing to remove his personal property, trash, and debris from the Sisters' parcel. After a hearing on April 12, 2011, the trial court entered an order finding that McVey had not only failed to remove the tenant, his horses, livestock, personal property, junk and debris from the Sisters'

---

[2]The record does not contain a transcript of this hearing.

parcel, he had in the interim brought an additional renter onto the property.[3] It also found that McVey had failed to make several required payments, such as the surveyors' fee and property taxes. The trial court held that McVey was in willful contempt of court for failing to abide by the August 2010 order. It declined to incarcerate McVey for the contempt but ordered him to remove his livestock within 7 days of the hearing, remove his renters within 10 days of the hearing, and remove his personal property, junk, and debris within 60 days of the hearing. The trial court awarded attorney fees to the Sisters and held that the amount of the attorney fees, surveyor fees, and property taxes would become a lien against the portion of the property awarded to McVey until paid.

This order finally moved McVey to action, just not the right kind of action. Enlisting the help of his son, McVey proceeded to dismantle and remove essentially all of the buildings, fixtures, and structures on the property awarded to the Sisters, namely, the pole barn, the garage with the second story apartment, a sawmill shed, and other sheds and buildings. McVey and his son removed fence gates, fence posts, and fencing. They also removed drainage tile and drainage structures, some of which were underground, leaving an open ditch. McVey and his son dug a large hole on the Sisters' property, a "burning pit," and the items burned in the hole included substances that produce toxins when burned, such as cross ties, PVC pipe, vinyl siding, plastic bottles, and asphalt roof shingles. These burned items were apparently buried on the Sisters' property. Later, McVey was cited and fined by the Tennessee Department of Environment and Conservation for illegal burning. About the only things McVey did not remove from the Sisters' property were the discarded pieces of glass and scrap metal, and McVey's horses and dogs.

In the wake of McVey's actions, the Sisters filed a second motion for contempt against him. The motion asserted that McVey had left the Sisters' property littered with glass and pieces of metal, left his livestock on their property, and that he did not evict one of the renters, an alleged registered violent sex offender, until two weeks after the trial court's deadline. The contempt motion noted that McVey dug a large hole on the Sisters' property and that he had been cited by the State for illegal burning in it. The Sisters' contempt motion also asserted that McVey had unlawfully removed or destroyed improvements on the property that was awarded to them, including the pole barn, the garage with the second-story apartment, two small buildings, the shed, fencing, fence gates, and drainage tiles. The motion stated: "What he could not strip or take, he destroyed." The Sisters' contempt motion sought compensatory damages for the environmental damage from McVey's illegal burning, and for the "unauthorized dismantling" of the improvements on the property. The Sisters' contempt motion asked the trial court to award McVey's parcel of property to the Sisters as

_____

[3]The record indicates that one of the tenants McVey had living on the Sisters' parcel was a registered violent sex offender.

-4-

compensation for their damages, based on the liens against the property previously ordered by the trial court. They also requested an award of attorney fees.[4]

The trial court held an evidentiary hearing on the Sisters' second motion for contempt on September 13, 2011. It heard testimony from McVey, his son, and one of the Sisters.

In his testimony, McVey admitted that he and his son dismantled and removed the pole barn, the garage with the upstairs apartment, the sheds and other buildings, fencing, fence gates and fence posts, drainage tile and structures. He conceded that they dug a large hole as a "burning pit" on the Sisters' parcel, and that he was cited and fined for illegally burning cross ties, roof shingles, plastics, and the like. McVey maintained that all of these actions were mandated by the trial court's order; he said he had built and paid for all of these items and insisted: "I was told by the Court to remove any and everything that I had put on this property." McVey claimed that his horses and livestock were on the Sisters' property by accident and would not admit that he left glass and debris on the property. McVey's son corroborated his father's testimony and his father's rationale for their actions. One of the Sisters, Ms. Lowery, testified that McVey had in fact left their property strewn with glass and metal debris. She also testified about the monetary damages that result from McVey's removal and destruction of the fixtures and structures on their property.

At the conclusion of the hearing, the trial court took the case under advisement. The trial court asked the parties to brief the issue of damages in a contempt proceeding.

On December 1, 2011, the trial court issued an oral ruling. It held that McVey failed to comply with the trial court's order by failing to remove from the Sisters' parcel all of his livestock, debris, and personal property. It noted that McVey admittedly dug an open hole on the Sisters' property, engaged in illegal burning, and buried the illegally burned items. The trial court observed that McVey "took more than he was allowed; fences, gates, tiles, barns, a sawmill building, [and] a rental building. . . ." The trial court found that McVey was in willful contempt of court "by his omission to do the things that he was directed to do." It again ordered him to clean up the glass, metal, and other debris left on the Sisters' property, and it also ordered him to return the fence gates, return the drainage pipe and reinstall it, fill in the hole that he dug, and clean up and remove the burned items.

The trial court then addressed the Sisters' request for an award of damages for the fixtures and structures on the property that McVey either removed or damaged. After reviewing

---

[4]The Sisters later amended their contempt motion to add a request for punitive damages. No punitive damages were awarded by the trial court and this is not raised as an issue on appeal.

Tennessee Code Annotated § 29-9-105, the trial court noted that its original order did not forbid McVey from removing the structures at issue, so removal or damage to the fixtures and structures was not a forbidden act. For this reason, the trial court held that an award of damages pursuant to Section 29-9-105 was not appropriate, and needed instead to be reserved for a separate filing.

The trial court entered a written order on February 27, 2012, reiterating and expanding on the findings of fact and conclusions of law in its oral ruling.[5] The trial court determined that its previous order was clear and unequivocal: "McVey was to 'remove all personal property and/or trash and debris,' not buildings. The Order did not allow for anything more than personal property." It found nothing in the record to support McVey's assertion that any of the buildings, gates, or fences on the Sisters' parcel belonged to McVey. The trial court noted that the original order contained "no reference for the removal of barns, apartment buildings, fences, gates, drainage tiles or other things of that nature." McVey was, once again, ordered to clean the Sisters' property by removing the broken glass, metal, and debris. He was also ordered to return the gates, return and install the drainage pipe, fill the hole he had dug, and clean up and remove all burned items. The trial court found that McVey had willfully failed to comply with the trial court's prior order, that this constituted contempt of court, and it awarded the Sisters $4200 in attorney fees and court costs. The order then addressed the Sisters' request for an award of damages for McVey's destruction of the improvements on their parcel:

> The Court has the authority to award damages under T.C.A. §29-9-105. The Court is of the opinion that the statute applies to an individual performing acts forbidden by a Court Order. In briefs that were submitted to the Court . . . , the Court is of the opinion that the cases are fairly clear on the court's authority to issue damages for contempt. [McVey] argued that damages aren't appropriate in this particular case as this is a damage case that should be filed in Circuit Court where a jury can determine the damages. [Petitioners] argued that the Court has the authority to issue an award for damages without having to go to a jury trial. The Court determined that the facts are clear. Mr. McVey admits that he removed the buildings permanently attached and fixed to the real property, his statement was "he put them up and therefore they were his." The Court was of the opinion that this is not what the Court allowed him to do and he was not authorized to do those things. The Court, however, is of the opinion that the Court Order did not specifically say that he could not tear the buildings

---

[5]The February 27, 2012 written order held that the Sisters had not carried their burden of proving that McVey permitted a renter to remain on the Sisters' property past the deadline in the trial court's prior order. This ruling is not appealed.

down or commit the other acts that he has committed therefore he didn't commit what the Court would call a forbidden act. Since the Order did not say he was forbidden from removing any buildings of this kind and therefore since he didn't commit what the Court would call a forbidden or prohibited act [then] the Court does not have authority to award damages under T.C.A. § 29-9-205. The Court's ruling in this matter is based on two (2) primary cases that were submitted by the parties in their briefs. One was **Overnight v. Teamsters**, 172 S.W.3d 507 and **Reed v. Hamilton**, 39 S.W.3d 115. Based on these cases the Court did not award damages. The Court was of the opinion that Mr. McVey's acts were an issue that has to be reserved for a separate filing.

Thus, the trial court held that McVey's actions in tearing down buildings and improvements were "not authorized" by the trial court's prior order, but were also not expressly "forbidden" by the trial court's prior order. As a result, the trial court concluded that it did not have authority under Tennessee Code Annotated §29-9-205 to award damages for these acts. The Sisters now appeal.

### ISSUES ON APPEAL AND STANDARD OF REVIEW

On appeal, the Sisters raise four issues:

> Under the facts of the present case, is [Section 29-9-105] applicable and is it the exclusive remedy to the Court regarding recovery for the Appellants' damages which were the result of [McVey's] willful and intentional contempt?
>
> Did the trial court err when it ruled it had no general powers under statute or case law to address the damages that were the result of the willful and intentional contempt of [McVey]?
>
> Did the Trial Court err when it ruled that the acts committed by [McVey] were not listed as forbidden acts in the Order therefore the Court had no power to award damages that were the result of [McVey's] willful and intentional contempt under [Section 29-9-105]?
>
> Did the Trial Court err when it ruled that the Appellants' only redress for damages is a new and separate lawsuit pursuant to [Section 29-9-105] after [McVey] came upon the Appellants' property under the Court's Orders, committed contempt, removed, destroyed, and/or damaged Appellants' real property and buildings?

Because this matter was decided by the trial court without a jury, the trial court's findings of facts are reviewed *de novo* on the record, with a presumption that those findings are correct unless the evidence preponderates otherwise. Tenn. R. App. P. 13(d). With respect to legal issues, our review is conducted "under a pure *de novo* standard of review, according no deference to the conclusions of law made by the lower courts." ***Southern Constructors, Inc. v. Loudon County Bd. Of Educ.***, 58 S.W.3d 706, 710 (Tenn. 2001).

"Appellate courts review a trial court's decision to impose contempt sanctions using the more relaxed 'abuse of discretion' standard of review." ***Freeman v. Freeman***, 147 S.W.3d 234, 242 (Tenn. Ct. App. 2003) (quoting ***McDowell v. McDowell***, No. M2000-00164-COA-R3-CV, 2001 WL 459101, at *5; 2001 Tenn. App. LEXIS 315, at *14 (Tenn. Ct. App. May 2, 2001)). Under this standard of review, the appellate court is not permitted "to substitute [its] judgment for that of the court whose decision is being reviewed." ***Konvalinka v. Chattanooga-Hamilton County Hosp. Auth.***, 249 S.W.3d 346, 358 (Tenn. 2008) (citing ***Williams v. Baptist Mem'l Hosp.***, 193 S.W.3d 545, 551 (Tenn. 2006); ***Eldridge v. Eldridge***, 42 S.W.3d 82, 85 (Tenn. 2001)). Thus, the trial court's decision regarding contempt sanctions should be reversed on appeal only if the trial court "applied incorrect legal standards, reached an illogical conclusion, based its decision on a clearly erroneous assessment of the evidence, or employs reasoning that causes an injustice to the complaining party." ***Konvalinka,*** 249 S.W.3d at 358 (citing ***Mercer v. Vanderbilt Univ.,*** 134 S.W.3d 121, 131 (Tenn. 2004); ***Perry v. Perry,*** 114 S.W.3d 465, 467 (Tenn. 2003)).

**ANALYSIS**

On appeal, the Sisters argue energetically that the trial court erred in finding that it did not have authority to award damages for McVey's contemptuous actions in damaging or removing virtually all buildings, fixtures, and structures on the parcel of property that had been awarded to the Sisters. They emphasize the authority of the courts to punish for contempt and argue that the trial court below had a duty to impose such punishment upon McVey, including an award of monetary damages for "stripping the property of improvements and structures and destroying anything else that would be useful to or usable by" the Sisters. The Sisters note that McVey admits these actions, indeed almost brags about them, and gave the trial court a near-facetious explanation that he thought that the court's order required him to remove or destroy the structures and fixtures on the property. They cite this as indicating the intentional nature of McVey's conduct. The Sisters argue that the trial court was authorized under Tennessee Code Annotated §§ 29-9-102 through 29-9-105, as well as the court's inherent authority to enforce its orders, to mete out punishment to McVey in a number of forms, including monetary damages, jail time, and fines. They ask this Court to reverse the trial court's order and remand the case to the trial court for an award of damages.

-8-

Counsel for McVey filed an appellate brief as well, arguing that the trial court did not err in holding that McVey's actions were not forbidden by the trial court's prior order and thus were not contempt. For that reason, McVey maintains, the trial court did not err in declining to award damages to the Sisters.

In this case, we are presented with the Sisters' appeal of the trial court's ruling on their motion to hold McVey in contempt of court. The motion asked the trial court to hold McVey in contempt for all of his actions, failing to remove the livestock, junk and debris he was ordered to remove, and removing or destroying the fixtures and structures. The motion asked the trial court to award the Sisters compensatory damages and attorney fees for the contempt. The Sisters' subsequent briefing to the trial court references criminal contempt, but acknowledges that "[c]ivil contempt obviously is the primary remedy," and seeks remuneration in the form of fines, damages, or an order awarding McVey's property to the Sisters.

The issues presented on appeal by the Sisters, listed above, are framed in a way that presumes that all of McVey's actions were in contravention of the trial court's orders and constitute contempt of court.[6] Nevertheless, we perceive that the threshold inquiry on appeal is whether the trial court erred in holding that McVey's actions in removing and destroying fixtures and structures on the Sisters' property were not covered by the trial court's prior orders and so did not constitute contempt of court.

"Civil contempt occurs when a person refuses or fails to comply with a court order and a contempt action is brought to enforce private rights." *Black v. Blount*, 938 S.W.2d 394, 398 (Tenn. 1996). The Tennessee Supreme Court has outlined the elements required to establish a claim for civil contempt of court:

> Civil contempt claims based upon an alleged disobedience of a court order have four essential elements. First, the order alleged to have been violated must be "lawful." Second, the order alleged to have been violated must be clear, specific, and unambiguous. Third, the person alleged to have violated the order must have actually disobeyed or otherwise resisted the order. Fourth, the persons' violation of the order must be "willful."

*Konvalinka,* 249 S.W.3d at 354-55 (footnotes omitted). To review on appeal the trial court's holding that the actions of removing and damaging structures and fixtures on the Sisters'

---

[6] One issue contends that the trial court erred in ruling that McVey's acts "were not listed as forbidden acts in the Order" but primarily addresses the parameters of Section 29-9-105 regarding an award of damages for willful contempt.

property requires us to focus on the second and third elements, the clarity of the underlying trial court order and whether McVey's actions contravened it. The **Konvalinka** Court expounded on the requirement that the underlying order be clear and specific:

> A person may not be held in civil contempt for violating an order unless the order expressly and precisely spells out the details of compliance in a way that will enable reasonable persons to know exactly what actions are required or forbidden. The order must, therefore, be clear, specific, and unambiguous. Vague or ambiguous orders that are susceptible to more than one reasonable interpretation cannot support a finding of civil contempt. Orders . . . must . . . leave no reasonable basis for doubt regarding their meaning.
>
> Orders alleged to have been violated should be construed using an objective standard that takes into account both the language of the order and the circumstances surrounding the issuance of the order, including the audience to whom the order is addressed. Ambiguities in an order alleged to have been violated should be interpreted in favor of the person facing the contempt charge. Determining whether an order is sufficiently free from ambiguity to be enforced in a contempt proceeding is a legal inquiry that is subject to de novo review.

**Id.** at 355-56 (internal citations, quotations and footnotes omitted). The **Konvalinka** Court also elaborated on the third element:

> The third issue focuses on whether the party facing the civil contempt charge actually violated the order. This issue is a factual one to be decided by the court without a jury. The quantum of proof needed to find that a person has actually violated a court order is a preponderance of the evidence. Thus, decisions regarding whether a person actually violated a court order should be reviewed in accordance with the standards in Tenn. R. App. P. 13(d).

**Id.** at 356 (internal citations omitted). Under this standard, we review the clarity and specificity of the underlying trial court order, *de novo*, and the preponderance of the evidence as to the trial court's factual finding on whether McVey violated the order.

The operative order is the trial court's August 11, 2010 order, partitioning the parties' property. The pertinent language in the order states:

> Mr. McVey shall have sixty (60) days from the entering of this Order to have all his personal property and/or trash and debris removed from Tracts 1 and 4 which have been awarded to the [Sisters].

The May 10, 2011 order finding McVey in contempt of court the first time repeated the language in the August 2010 order: "Mr. McVey shall have sixty days (60) from April 12, 2011 to have his personal property and/or trash and debris removed from Tracts One (1) and Four (4)." That order, we now know, led to McVey's decision to damage and remove all of the buildings, structures, and fixtures on the Sisters' parcel, under the guise of "complying" with the trial court's instructions.

After the hearing on the Sisters' second motion for contempt, the subject of this appeal, the trial court recounted how it chose the language for its initial order: "Mr. McVey had a collection of items basically stored on the [Sisters'] real estate. Mr. McVey referred to them as a collection of items and the other side referred to them as junk." Hence, the trial court explained, "the Order describ[ed] the things to be removed as trash and debris as well as personal property." It did not interpret its prior order as calling "for the removal of barns, apartment buildings, fences, gates, drainage tiles or other things of that nature." The trial court ultimately found that McVey's actions in removing and destroying these structures and fixtures was simply not covered by its prior order; it held that McVey "was not authorized" under the order to take these actions, nor was he "forbidden" from them by the terms of the order. On this basis, the trial court concluded that these actions did not constitute contempt of court.[7]

After carefully reviewing the record, we agree. From our *de novo* review of the trial court's order, we agree with the trial court that it cannot be reasonably read to address, one way or another, McVey's conduct in removing and destroying buildings, structures, and fixtures on the Sisters' property. ***Konvalinka***, 249 S.W.3d at 356 n.19. Under these circumstances, it follows that the evidence does not preponderate against the trial court's factual finding that this conduct did not violate the order and did not constitute contempt of court.

---

[7]The trial court signaled to counsel for the Sisters that McVey's misconduct would likely be actionable if it were the subject of separate claims, not contempt of court, stating: "The Court was of the opinion that Mr. McVey's acts were an issue that has to be reserved for a separate filing." We have no way of knowing from this record whether the Sisters took the trial court's suggestion, though we note that one of the issues on appeal raised by the Sisters, listed above, asks whether the trial court erred "when it ruled that the [Sisters'] only redress for damages is a new and separate lawsuit. . . ." As the record before us in this appeal does not contain a "new and separate lawsuit," addressing this issue on appeal would amount to giving an advisory opinion, which we respectfully decline to do. We note, however, that the trial court's order by no means intimated that McVey's rather brazen actions were lawful or that he could not be held liable for them; it held only that his actions did not, strictly speaking, constitute contempt of court.

The trial court held that some of McVey's conduct – his failure to remove junk and debris, and his failure to remove all of his livestock – *did* constitute contempt of court. The trial court declined to award the Sisters monetary damages for this contempt. Instead it chose to, once again, order McVey to clean up the junk and debris, and it also awarded the Sisters attorney fees. This holding does not appear to stem from any perceived limitations on the trial court's authority to award damages under Tennessee statutes; the trial court's discussion of the limits of its authority under Tennessee Code Annotated § 29-9-105 pertains only to McVey's actions in removing and destroying buildings, structures, and fixtures on the Sisters' parcel. As noted above, we have affirmed the trial court's holding that these actions did not constitute contempt; this holding obviates the need for us to examine the limits of the court's authority to impose various remedies for contempt under the Tennessee statutes cited by the Sisters. Thus, we review the trial court's decision not to award monetary damages or other relief to the Sisters for McVey's contemptuous failure to abide by the trial court's order for an abuse of discretion. *Id.* at 358.

Certainly the trial court exercised considerable restraint in the punishment doled out to McVey for his continued failure to abide by the trial court's orders. Faced with such recalcitrance by McVey, we cannot say that we would have been so restrained. Nevertheless, the appellate court is not permitted to substitute its judgment for that of the trial court in the choice of sanctions for contempt of the trial court's orders. *Id.* From our review of the record, we find no abuse of the trial court's discretion.

These holdings pretermit the remaining issues raised on appeal by the Sisters. We find no error in the trial court's decision, and so affirm.

## CONCLUSION

The decision of the trial court is affirmed. Costs on appeal are taxed to Petitioner/Appellants Pam Lowery and Debbie Nelson and their surety, for which execution may issue, if necessary.

_____
HOLLY M. KIRBY, JUDGE